**In re NINE NORTH CHURCH STREET, Inc.**

District Court, N. D. New York.
Aug. 12, 1935.

Benjamin McClung and Charles B. Sullivan, both of Albany, N. Y., for debtor.

Glass & Lynch, of New York City (Joseph Glass and Leslie Kirsch, both of New York City, of counsel), for objecting bondholders.

COOPER, District Judge.

The debtor filed a voluntary petition for reorganization under section 77B of the Bankruptcy Act (11 USCA § 207), which was duly approved by the court.

The debtor presented a plan for reorganization which was in reality a plan of ajustment of bonded debt, promulgated by its predecessor in title and accepted by more than two-thirds of the bondholders.

On the return day of the order to show cause why such plan should not be approved and adopted, Wm. J. Brunning, on behalf of 14 bondholders, appeared through the above-named counsel and objected to the plan of reorganization. The grounds of such objection are later set forth herein. These 14 bondholders held about 13 per cent. of the outstanding bonds involved in this proceeding.

Subsequently, the said Brunning moved to modify the injunction granted herein, so that such injunction should no longer restrain a pending suit brought in the New York Supreme Court by the Guaranty Trust Company in behalf of the 14 bondholders against the Maryland Casualty Company, which had guaranteed the principal and interest of the bonds covering the property of the debtor.

Bonds to the amount of $310,000 were issued on June 15, 1925, by the Colonial Apartment Corporation, the then owner of the premises, 9 North Church Street, Schenectady, N. Y. These bonds were serial bonds maturing in various amounts from June 15, 1928, to June 15, 1937, with interest at 6 per cent., payable semiannually. The said Colonial Apartment Corporation and another corporation, the Puritan Mortgage Company, as principals, and the Maryland Casualty Company, as surety, executed and delivered to the Guaranty Trust Company, the trustee of the mortgage given to secure the $310,000 bonds, an instrument called a surety bond, in which they jointly and severally guaranteed among other things to pay the principal and interest of the mortgage bonds or certificates as provided for in the trust mortgage.

In January, 1933, the legal title to the mortgaged premises was transferred by Colonial to another corporation called the Gedex Realty Corporation. This Gedex Corporation also apparently acquired title to various other properties, mortgage bonds, or certificates of which had also been guaranteed by the Maryland Casualty Compa-

ny, and possibly by the Puritan Mortgage Company.

On May 15, 1935, the Gedex Company conveyed to the debtor corporation herein the legal title to the mortgaged premises. On May 21, 1935, the debtor filed a petition under section 77B (11 USCA § 207) for reorganization. All these corporations are in effect subsidiaries of the Maryland Casualty Company.

About September 21, 1934, the Guaranty Trust Company, the trustee of the mortgage, brought suit against the Maryland Casualty Company as sole defendant to recover the defaulted interest and matured principal payable to the holders of the mortgage bonds and certificates. This is the action now restrained, which the 14 bondholders ask leave to bring to trial. The Guaranty Trust Company is neutral in the matter.

The property Nine Church Street, Schenectady, N. Y., was the only property owned by the Colonial Corporation. On August 10, 1933, about seven months after the Gedex Corporation had taken title from Colonial and about six weeks before the commencement of the action on the guaranty, Gedex circulated a letter among the holders of the mortgage bonds or certificates in which it recited that the revenues of the property were unable to pay the carrying charges, including interest and the certificates as they matured, and proposed a readjustment. The essentials of the readjustment plan were these:

(1) The maturity of each of the certificates is extended, respectively, for five years from its original maturity date.

(2) The rate of interest is reduced to a minimum of 2½ per cent. for three years from the last payment in full and to a minimum of 3 per cent. thereafter to maturity. However, should the property earn more than the minimum interest requirements, such excess is to be applied during the year following that in which it will have been earned, to the payment of additional interest up to 6 per cent.

(3) The trust mortgage to be a lien upon the property until the eventual payment of all unpaid interest up to 6 per cent. annually.

(4) The debtor and Maryland Casualty Company agree that the reduction of interest consented to by the certificate holders "shall not be deemed to apply to the right of the certificate holder to receive payment from the mortgaged property or the proceeds thereof, and that the mortgage shall continue as a lien on the mortgaged premises (i. e., mortgaged premises alone and not as a claim against the surety bond) for the full original interest of 6 per cent. per annum, and that any payment of interest made shall be applied on account of such interest rates. * * *"

(5) As an integral part of the plan, the Maryland Casualty Company guarantees:

(A) The payment of the principal at the extended maturity date.

(B) The payment of interest at the reduced rate.

(C) The debtor corporation will fulfill its obligations under the adjustment plan, i. e., among other things that all excess earnings will be applied as provided in the adjustment plan.

Under the plan, also, the Maryland Casualty Company subordinates $25,000 principal amount of matured certificates which it took over under its guarantee, together with the accrued interest thereon, to the certificates held by the other holders of certificates. This reduces the outstanding mortgage certificates which are a first lien on the property from $268,000 to $243,000 at the time of the filing of the petition herein.

This subordination is both as to principal and as to interest at 2½ per cent. and 3 per cent., respectively, in any event, and as to all additional interest which the property earns during the continuance of the plan up to 6 per cent.

The debtor contends that under the plan the certificate holders retain substantially all the rights which they had. They retain the full extent of their original lien, which continues to secure the payment of their principal in full, at the extended date and their interest at 6 per cent. in part as it is earned and in part at a later date. The contention is that they further retain the guarantee of the Maryland Casualty Company as to the payment of principal and of interest at the minimum adjusted rate and that they have Maryland's guarantee that interest up to 6 per cent. will be paid if earned. The difference between the interest to the extent earned and the interest at 6 per cent. remains a lien against the property until paid.

The debtor points out that under this reorganization plan the security of the bondholders is not lessened by the intro-

duction of new securities prior to the lien upon the real estate, but that such rights are enhanced by virtue of the preference which they are given under such plan.

This preference seems to be that the guaranty premium of the Maryland Casualty Company, which is secured by the trust mortgage indenture and amounts to an annual sum of one-half of one per cent. of the outstanding certificates, shall not be payable until all the certificate holders have received in full their principal with interest at 6 per cent.

It is claimed that there is a further preference under this plan resulting from the fact that all past-due certificates and coupons heretofore paid by and now held by the Maryland Casualty Company (now amounting to upwards of $48,000 in the aggregate of such certificates and coupons) and any others which the Maryland Company may hereafter acquire and hold, are subordinated to all other certificates and coupons outstanding and unmatured.

This further preference arises from the fact that such certificates and coupons paid by the Maryland Casualty Company are in no way subordinated under the terms of the trust mortgage, but share pari passu with the other certificate holders.

The debtor claims that the important fact of this preference is that the face amount of the certificates secured by the lien is reduced from $268,000 to $234,000 so that each bondholder's proportionate share of the underlying collateral is enhanced so much.

There are additional features of the plan which it is claimed safeguard and assure the carrying out of the plan according to its terms. These consist of an annual audit to show what additional interest has been earned in excess of the minimum interest so its payment may be required in the year following. Further features are a guaranty to which the Maryland Company is a party; that there will be paid each calendar year the equivalent of 1½ years taxes and penalties until no arrears in taxes and penalties shall remain, provided the current income of the property is insufficient. The current income of the property is to be charged in an amount only equal to the taxes for the current year.

The debtor claims that about 75 per cent. of the outstanding bondholders have consented to this plan. An order was made by this court in this proceeding on June 22d, providing that nonassenting stockholders should be paid at the same rate.

The foregoing plan of reorganization was not first made and submitted in these proceedings, but is taken over from the submission and acceptance in 1933, as before shown. It is claimed to be equivalent to a resubmission and acceptance herein by the same bondholders or certificate holders and is later herein referred to.

Fourteen of the bondholders criticise this plan in various respects, and they have also made a motion, which is considered concurrently here, that they be permitted to go on with their litigation brought by the Guaranty Trust Company, the trustee of the mortgage, against the surety company under its original guarantee of the payment of the certificates as they mature and the interest thereon at 6 per cent. as it matured.

The ground of the motion is that such action is an independent action by the trustee of the mortgage under the mortgage trust indenture, not against the debtor or any of its predecessors, but against the Maryland Company as guarantor or surety, and that this action against the surety as sole defendant is not a suit against the debtor and does not affect the debtor's property, and that therefore this court has no power to restrain such action, but should permit it to proceed.

It is reasonably clear that if this action proceeds and if judgment is recovered against the surety company, the plan of reorganization is futile and the court's approval of the same will be an idle gesture and its execution would be impossible.

While there are numerous decisions holding that an action against a surety may not be stayed at the application of the principal debtor, and while there are other decisions that in bankruptcy the right of the creditor to pursue his remedy against the surety in any bankruptcy is not impaired by the debtor in bankruptcy and cannot be restrained, it is a matter of doubt whether these decisions have application to the reorganization proceedings under section 77B.

These fourteen certificate or bondholders also contend that they are in a separate class under section 77B and that no plan can be adopted and approved which does not carry the consent of two-thirds of these 14 as a separate class.

The chief questions here are:

(1) May the court take the plan of adjustment or reorganization agreed to by the

debtor's predecessor, the Gedex Company, and 75 per cent. of the then certificate holders before. these proceedings were commenced as a plan of reorganization in these proceedings if the same is in substance resubmitted, and no withdrawals of previous approval are filed.

(2) Is such plan reasonable as safeguarding the interest of all the certificate holders?

(3) Are the nonassenting certificate holders a separate class of creditors from the assenting certificate holders so that the plan cannot be approved by the court without the consent of two-thirds of the nonassenting certificate holders?

(4) Has the court power under 77B to permanently stay the suit by the Guaranty Trust Company against the surety, the Maryland Casualty Company, assuming that the plan agreed to by 75 per cent. of the certificate holders before this proceeding was commenced is reasonable and approved by the court.

There seems to be no precedent to aid in the solution to questions 1, 3, and 4. At least, the industry of counsel has not resulted in the citation of any controlling or persuasive precedent in court decisions, nor has the research of this court brought any to light.

Turning to the first of the above questions. The interrogation essentially is: Can a plan of a reorganization which was promulgated by the debtor's predecessors in title of the mortgaged property prior to the enactment of section 77B be made available in these proceedings by the present debtor as if it had been originally submitted by the present debtor after the filing of the petition herein under 77B, providing said debtor has filed the same as a plan of reorganization under section 77B and given all parties in interest notice as required by this section.

The debtor asserts that it can be made so available, and refers to a similar proceeding in the District Court of New Jersey in which a similar plan promulgated and accepted by more than two-thirds of the certificate holders in that case prior to the filing of the petition under 77B was adopted by the District Court as a plan of reorganization without promulgation and acceptance after the commencement of the proceedings under 77B. This is the Matter of Lauvir Court Inc., an unreported Case.[1]

The objecting certificate holders assert that no question was raised in that proceeding as to the invalidity of the plan promulgated and accepted by more than two-thirds of the certificate holders and not again submitted under the reorganization under 77B, and insist that the court is without jurisdiction to approve this plan because it never had been promulgated since the commencement of the proceeding, and no one may now say whether the same certificate holders, assuming that they are the same, would accept the plan as promulgated by the present debtor.

In these proceedings, after the filing and approval of the petition herein, the debtor duly published a notice that the proposed plan of reorganization had been filed herein in the office of the clerk of the court, and asked creditors and stockholders to file their claims herein. It provided that the trustee of the mortgage company file the claims for the certificate holders, and also that the certificate holders could file their own claims, on or before the 14th day of June, 1935.

The same publication gave notice that on the 15th day of June the matter would come before the court for the purpose of determining (a) whether the court shall continue the debtor in possession of his property and assets, and (b) whether an order should be entered approving the plan of reorganization and providing adequate means for the consummation thereof, and (c) for such other and further relief as may be proper under the premises.

A copy of such notice was mailed on the 1st day of June, 1935, to all certificate holders at their respective addresses, and affidavit of such mailing has been filed.

On the 15th day of June, upon the return of such order, no certificate holder who had previously assented to the plan of reorganization promulgated by the Gedex Company, as aforesaid, withdrew his or her assent or objected to the plan of reorganization, or otherwise appeared in the action. Proof of all the previous assents were duly filed. The only creditors who appeared at all were the 14 bondholders represented by Wm. J. Brunning, their agent, who appeared by the attorneys mentioned above. It would seem reasonably clear, therefore, that, by failure to dissent or withdraw, all those who assented to the plan prior to the commencement of these

---

[1] No opinion filed.

proceedings, and while the Gedex Company was the owner of the realty, in legal effect consented to the same plan of reorganization herein as was then submitted and approved by them. The objectors never consented to or participated in that plan, and oppose it now.

Unless the courts are to strain for technicalities, it would seem that to all intents and purposes the plan submitted and consented to in writing by the assenting certificate holders has been resubmitted and approved in this proceeding. Apparently with full knowledge of the same plan, promulgated, submitted, to, and accepted by them, none of the assenting bondholders has shown their disposition to withdraw their consent to or object in any wise to this plan of reorganization. It is not unreasonable then to hold that the plan submitted previously, and in legal effect resubmitted in this proceeding, has been submitted and accepted in substantial compliance with the provisions of 77B, and this court so holds.

It would not seem that the statute enacted for the express purpose of relieving harassed debtors could be defeated because the certificate holders were not asked to sign anew what they had shortly before signed and consented to.

Had they changed their minds about agreeing to the identical plan of reorganization, they were given opportunity to declare themselves, and failure to do so may be taken as renewed consent to the said plan.

The contention by the objecting certificate holders that there has been any change in the plan is unsupported by the record. The contention that some deception was practiced upon the certificate holders in overstating the amount of the obligations is also unsupported by the record so far as the plan of reorganization is concerned.

■ The fact that the Maryland Casualty Company had under its ·guarantee contract paid certain holders as the certificates matured and taken them over, did not change the amount of the mortgage debt. The fact that the amount so taken over is subordinated to the outstanding certificates under the terms of the new guaranty may not have been clearly stated in the previous plan of reorganization, is not apparently an actual misrepresentation or a nonrepresentation in any way prejudicial to the certificate holders whose certificates are still outstanding unmatured on any date. It is now clearly stated in the final statement of the plan and is not prejudicial but beneficial to the certificate holders. Nor may one who has not assented to such plan of reorganization assert that others were deceived by such representations as were made. The objecting. creditors will have no part in this reorganization if they can prevent it, and, in the absence of objection on the part of any of those who have consented to the plan of reorganization that they were not fully informed of the facts, the court need give itself no concern unless there was such palpable misrepresentation as would of necessity deceive the certificate holders, and the court can find no such palpable, gross, or deliberate misrepresentation in this case.

■ Turning now to the objecting certificate holders' contention that they are a separate class of creditors, and that the plan cannot be approved without the consent of two-thirds thereof, it appears that the objecting creditors rely for support for this contention upon the fact that they were nonassenting creditors to the reorganization plan when it was promulgated and approved prior to these proceedings. They say that outside of the 77B proceedings they have consented to no modification of their certificate contract for payment of principal and interest, and that by that very fact of nonassent they are in a separate class from all others who did consent to the original Gedex plan and have reduced and modified their contract by a conditional and temporary reduction of the rate of interest for a limited period of time.

While there might have been some support for such contention prior to the enactment of 77B, and the filing of petition in this proceeding, if we view this reorganization plan as filed anew and accepted anew by two-thirds of the certificate holders, and that view is taken here, their position is no other than that of objecting creditors who refuse to assent to the reorganization plan. That a two-thirds majority of the creditors may force a recalcitrant minority into a plan of reorganization is evident and is the main purpose of section 77B. There are authoritative decisions so construing the same.

In Re Prudence Bonds Corporation (C. C. A.) 75 F.(2d) 262, 263, one Bertha Radin was suing the trustee on a collateral pledge of security of mortgage certificates for an account of the income. Her position was

much like that of the objecting bondholders here. She insisted upon the letter of the mortgage certificates contract. The court said in that case: "Since the whole purpose of a reorganization proceeding is to avoid the deed and to dispose of the pledge in violation of its terms, Radin is in effect asserting the rights of the beneficiaries in accordance with the deed; and the trustee of the pledge is trying to pave the way for its repudiation. Radin is right, unless the law has effectively intervened. It has; section 77B contemplates just what the trustee seeks, for it provides that a two-thirds majority may with the court's approval coerce the minority and force a new arrangement upon it. If it is valid, the minority will, in the event that a plan is approved, lose any power to protest, and the majority which will favor the plan, may lawfully consent to, and indeed insist upon, the jurisdiction of the bankruptcy court over the pledge; subdivision (o) will then apply."

Of like effect is In re Central Funding Corporation (C. C. A.) 75 F.(2d) 256, 258. There the constitutional power to force a recalcitrant minority into a plan of reorganization is declared.

So it would seem that whatever may have been the status of the 14 objecting certificate holders prior to the time of the jurisdiction of the bankruptcy court under section 77B was invoked, since that time, and assuming that plan of reorganization has been adopted herein, the objecting certificate holders are not in a separate class of creditors, the consent of two-thirds of whom is essential to the adoption of the reorganization plan. They are merely certificate holders and creditors of exactly the same status as the assenting certificate holders, and their desires must be overruled because they are in conflict with the desires of the two-thirds in a reorganization plan within the jurisdiction of the court under the statute.

If it were otherwise, a single recalcitrant creditor could declare himself as a separate class of creditor and render futile the statute and the reorganization proceedings.

The plan is reasonable and serviceable to the interests of the certificate or mortgage holders. It is quite true that they might continue the suit on their guaranty by the Maryland Casualty Company. Under the plan they retain their full guarantee of the Maryland Company, except as to a portion of the interest for five years, and they may get all that.

There is no good reason why the court should not approve such a plan if the two-thirds of the certificate holders so desire, and the plan is approved.

This leaves for decision only the motion of the 14 certificate holders that the injunction herein be vacated so that they may bring on for trial the independent suit against the Maryland Company, which presumably lies only for the matured certificates and arrearages of interest on all certificates. The principle is not changed if option to declare the whole amount due and payable on default exists and such option has been exercised and suit brought thereunder for the whole amount due.

That independent of section 77B such a suit would lie and might not be restrained even in ordinary bankruptcy proceedings may be conceded. But section 77B is a very comprehensive statute. Its constitutionality has been authoritatively decided. See Continental Ill. Nat. Bank & Trust Co. v. Chicago, R. I. & P. R. Co., 294 U. S. 648, 55 S. Ct. 595, 79 L. Ed. 1110; In re New Rochelle Coal & Lumber Co. (C. C. A.) 77 F.(2d) 881. In re Central Funding Corporation (C. C. A.) 75 F.(2d) 256, supra.

That under it a readjustment of the creditors' rights may be had and a modification of the capital structure be carried out is clear.

That the statute carries the power, when two-thirds of the creditors consent thereto, to change their fixed obligations into income bonds and even into the capital stock and to eliminate altogether the claims of junior creditors, if done through a reorganization proceeding under section 77B, is manifest. Authoritative decisions such as In re Central Funding Corporation so hold.

That creditors in a separate class who do not assent to the reorganization may not defeat the reorganization if they are adequately protected and fully compensated is set forth in Re Murel Holding Corporation (C. C. A.) 75 F.(2d) 941; but there is no such class of creditors here.

One of the purposes of section 77B is to allow harassed debtors to reorganize without the cumbersome and expensive procedure of mortgage foreclosures or equity receiverships.

If junior creditors or stockholders have no real equity in such a property, their claims and rights may be eliminated under

section 77B, as well as in a mortgage foreclosure or a sale in equity receivership.

True, in a mortgage foreclosure, where the property is sold and the first mortgage bondholders get no more than the amount of their first mortgage debt, the second mortgage bondholders and general creditors may still bring an action and obtain a judgment against the debtor.

But bankruptcy, in which the remaining assets, if any, of the mortgaged debtor would be marshaled for distribution among its creditors, would enable the bankrupt to be discharged from all such debts.

Section 77B is much like composition in bankruptcy so far as the creditor retaining any claims against the bankrupt are concerned. As in composition, so under 77B it would seem that the right of the two-thirds majority to coerce the minority is an essential part of the scheme of the section and would be defeated if a nonassenting creditor to the reorganization could pursue independent remedies against the sureties.

In the Central Funding Corporation Case, the guarantor was released because under the reorganization plan the creditors accepted new securities as to which there was no guarantee.

True enough, it was alleged in the petition for reorganization in Re Central Funding Corporation that the surety was unable to make good its guaranty, whereas in the case at bar it is alleged by the objecting debtors that the Maryland Company is a solvent corporation worth several million dollars over its liabilities. The difference in the financial status of the guarantor in the Central Funding Corporation Case and the guarantor here distinguishes the two cases in point of fact. It is doubtful whether they may be distinguished in principle.

However that may be under the proposed plan of reorganization, the Maryland Casualty Company, the surety, is not freed from its guaranty. It still guarantees the payment of the principal and guarantees the payment of the interest at the minimum rate set, and guarantees the application of the income of the property for the remainder of the interest up to 6 per cent., the full rate of interest, and undertakes some new guarantee to protect the certificate holders and the property from delinquent taxes and tax sales, so that, all told, the difference between the guarantee as it was outside of the reorganization and the guarantee as it was within the reorganization is not serious and is so small that it may almost be called unsubstantial; it being unquestioned that the fixed obligations of the debtor may under a reorganization plan be transformed into participation of income or proceeds of sale without fixed obligations. In re Central Funding Corporation, supra, 75 F.(2d) 256, page 259.

It would seem clearly within the jurisdiction of the court to approve of the plan which not only retains the fixed obligations with the same security so far as the mortgage covering the real property is concerned and only in slight degree modifies the guarantee of the surety, even though that surety may be solvent and able to answer, provided only two-thirds of the certificate holders believe it to be to their interest to make such slight modifications.

Were it otherwise, there could be no reorganization under 77B, where there is a solvent guarantor not in reorganization under section 77B, guaranteeing the obligations of an insolvent corporate principal which has invoked the beneficent provisions of section 77B to relieve its distressed financial condition.

The section is so comprehensive as to permit reorganization (in all but the excepted corporations) whatever the debtor's financial condition may be and whatever the ramifications of guarantor, surety, etc., may be. The safeguard contemplated by the section for all creditors is the required consent of two-thirds. What two-thirds think is for their best interests must be accepted by the remaining one-third, having in all respects the same status, whether there be a guaranty by a solvent third party or not, and whatever may happen to that guaranty under the plan accepted by two-thirds.

There seems to be no precedent to support this view, but this court believes that such is within the spirit and intent of section 77B.

It is not necessary to determine whether any change in the guaranty would release the guarantor or surety. It may be assumed that any increase in the obligation without the guarantor's consent would invalidate the contract of guaranty.

Here the guarantor consents to be bound by the guaranty as slightly modified. No one else may speak or object for the guarantor.

It follows, therefore, that if this view correctly states the meaning and intent of

the statute, the minority are compelled to go along with the plan of reorganization and accept a modified guaranty of the surety, and no action will lie after the approval and taking effect of the plan of reorganization, and all pending actions based on the guaranty as it was prior to the reorganization proceedings should be permanently restrained.

■ The objecting creditors lay stress upon the fact that the Puritan Corporation, which made itself one of the obligators or guarantors herein, is released under the reorganization plan either expressly or by operation of law, because the reorganization plan involves no obligation of that company, continued or modified.

There is no proof in the record that the Puritan Corporation has any financial responsibility whatever, or even present existence. Did it have any such responsibility it may be assumed that the objecting creditors would have offered proof to that effect in this proceeding. That the reorganization proceedings may be carried out under a new plan of capitalization which in nowise continues the obligation of the worthless guarantor is clear from the Central Funding Corporation Case.

In the absence of showing that anything is lost because no one has shown any financial responsibility of the Puritan Corporation, that change in the status of the certificate holders under the reorganization plan may be disregarded.

■ The objecting certificate holders have submitted four proposed amendments to the reorganization plan. These are designated, as A, B, C, and D. C and D are approved and shall be incorporated in the plan. They are in the nature of clarifying provisions, or are more beneficial to the certificate holders than the plan unamended. No resubmission is therefore required.

Amendments A and B are rejected.

It is not clear to the court in just what form the Maryland Casualty Company has guaranteed the carrying out of the guarantee provisions of the reorganization as originally submitted or as modified herein.

Before the order or decree herein is signed, there should be attached a comprehensive agreement of guaranty formally executed by the Maryland guaranteeing the carrying out of the plan as originally submitted, as modified herein, and all other obligations assumed or to be assumed by it under the decision and decree herein.

The motion to vacate or modify the injunction so as to permit the prosecution of the pending suit against the surety is denied.

An order may be entered in accordance with the terms of this memorandum.

If not agreed to, the same may be settled on September 1st. Allowances, if not agreed upon subject to the approval of the court, may be settled at the same time.