### In re H. W. CLARK CO. *

### EXLEY et al. v. H. W. CLARK CO.
### No. 5576.

Circuit Court of Appeals, Seventh Circuit.
Oct. 31, 1935.

Rehearing Denied Dec. 5, 1935.

*Rehearing denied Dec. 6, 1935.

682

Randolph Bohrer, of Chicago, Ill. (Norman H. Arons, of Chicago, Ill., of counsel), for appellants.

Harry I. Hannah, of Mattoon, Ill., for appellee.

Before SPARKS and ALSCHULER, Circuit Judges, and BRIGGLE, District Judge.

SPARKS, Circuit Judge.

This action sought a reorganization of appellee, an Illinois corporation, under sections 77A and 77B of the Bankruptcy Act (11 USCA §§ 206, 207). Appellee's amended petition and modified plan were approved as fair and equitable, and from that order òf approval this appeal is prosecuted, under section 24b of the act as amended by Act May 27, 1926, § 9 (11 USCA § 47 (b).

The facts which are supported by substantial evidence are as follows: Appellee is a corporation which has operated continuously since 1911, in manufacturing meter boxes and water works appliances, at its plant near Mattoon, Illinois. Its capital stock consisted of 500 shares of seven per cent preferred, par value $100 per share, and 20,000 shares of common of no par value. Its properties consisted of about five acres of land upon which is built a modern brick factory building with floor space of about 35,000 square feet. In 1917 it was destroyed by a cyclone, and was rebuilt in 1919 at an actual cost of $125,-000, including equipment. It was then appraised by the Manufacturers' Appraisal Company at $122,240.42, and was reappraised in 1928 by the same appraisal company at a reproduction cost of $210,213.78, its sound value less depreciation being fixed at $172,953.10. The rebuilding of the plant necessitated the borrowing of money, and accordingly $50,000 of six per cent bonds were issued, secured by a first mortgage on the plant and real estate, and about $50,-000 was borrowed on the company notes from the local banks. In 1929 the bond issue was increased by $10,000, and the total issues were renewed and extended to 1935. Only $53,700 of the bonds were actually sold. Up until the fall of 1929, the debtor did a good business and repaid the entire amount of $50,000 borrowed from the local banks. Four per cent dividends were paid on the common stock in 1927 and 1928, and seven per cent dividends were paid on the preferred stock up to December 31, 1929. Since that time no dividends were paid. The debtor continued to operate its plant during the years of 1929 to 1934, inclusive. Its outstanding current liabilities were reduced from $23,392.66 on December 31, 1930, to $3,438.72 on February 18, 1935, and on that date the accounts receivable were $10,474.62. By February 12, 1935, when the petition for reorganization was filed, the outstanding bonded indebtedness had been reduced to $43,800, and bonds in the value of $16,200 were held in the treasury. The interest on the bond issue was kept paid until October 1, 1932, the first default being on April 1, 1933. Since that time no interest has been paid. Approximately $4000 was charged off each year for depreciation.

On February 1, 1935, a committee of debtor's bond and stockholders sent to all the bond and stockholders a financial statement of the debtor accompanied by a letter proposing a plan of reorganization, which plan was the same as that filed with the original petition herein. With each letter was sent a consent which each bond and stockholder was requested to sign, and they were asked to deposit their stock or bonds with the National Bank of Mattoon as escrow agent. On February 9, 1935, a foreclosure suit was filed in the Circuit Court of Coles County, Illinois, in the name of Jacob Stump, Jr., master in chancery, as successor in trust, against the debtor to foreclose the trust deed which secured the

bond issue, and for the appointment of a receiver. That suit was instituted at the request of appellants, the Exleys, the holders of bonds of the face value of $12,000. On February 12, 1935, the directors of the debtor, by resolution, directed the filing of a petition for reorganization under sections 77A and 77B, and on the following day it was filed in the United States District Court for the Eastern District of Illinois, in which District Judges Lindley and Wham reside and regularly preside. Judge Lindley was the regular presiding judge at Danville, where the petition was filed, but at that time he was absent and it was presented to Judge Wham, who approved it as being filed in good faith and in compliance with section 77B. At the same time he issued an order restraining Stump and all others from further prosecuting the foreclosure in the state court.

On February 16, appellants, the Exleys, entered their appearance and moved the court to require the debtor to file a schedule of its assets and liabilities. That motion was sustained, and on March 4, the schedule was filed.

On February 23, the debtor filed its petition for leave to continue in possession and operation of its business, and the petition was on that day granted by Judge Lindley until the further order of the court. On February 27, the debtor filed its petition for the court to fix the time and place for a hearing on the matter of the continuation of the debtor in possession and operation of its business, and the question of the debtor's proposed plan of reorganization, and the priority of its continuing to solicit assents, and it also asked leave to file an amended petition. The court thereupon fixed March 13, 1935, as the date for hearing, and prescribed the character of notice to be given, and permitted the debtor to file an amended petition within ten days. It was filed on March 4. Notice of the hearing on March 13, was given in compliance with the court's order by mailing and publication. The hearing was afterward adjourned until April 1, and because of the fact that Judge Lindley was sent to California by the Department of Justice, that hearing was had before Judge Wham, at which hearing the oral testimony of witnesses and documentary proof were presented. The taking of evidence was concluded on that day and the cause was adjourned until April 23, at which time it was argued by counsel and adjournment was had until the following day, when the debtor was granted leave to file a modified plan of reorganization within fifteen days, and appellants were likewise given leave to submit a plan. The court fixed May 17 for a further hearing upon the fairness of the proposed plan and the proposed modifications, as well as upon the question of the debtor's continued possession and operation. The court also provided for the character of notice by mailing, and it was thus given. The debtor's modified proposed plan was filed with the court on May 9, but the appellants never submitted any plan. On May 17 the hearing was again adjourned to June 5, at which time appellants filed their objections to the modified plan, and also filed their motion to dismiss the debtor's petition for reorganization.

Judge Lindley returned shortly before June 5, and it was stipulated between the parties that the cause be transferred from Judge Wham to Judge Lindley, and thereupon the hearing was again adjourned until June 25, with directions from the court to submit the case upon the record and evidence taken before Judge Wham, together with written briefs, and arguments of counsel for the interested parties. Neither party objected nor gave notice of any desire to offer further evidence. Judge Lindley after having read the briefs and the transcript of evidence, and after examining the exhibits, rendered a decision with findings of fact, and conclusions of law, in which the debtor's modified plan of reorganization was approved as fair, equitable and undiscriminatory. The court, however, added to its approval the following conditions: That the court should retain jurisdiction for five years, which might be terminated sooner upon hearing and notice, and might be extended if necessary or desirable; that there should be no diversion of the working capital fund except by order of the court after notice and hearing; that the costs of administration should be paid in cash; that salaries of the corporate officers should not be increased, and no dividend on the common stock should be declared or paid, except by order of court after notice and hearing; that $5000 in bonds held by certain of the directors, and also $16,200 in bonds held in the treasury should be cancelled. A decree was accordingly entered on July 12, 1935.

Several days after the court had rendered its decision, the appellants filed

684

proofs of their claims, and what purports to be a revocation of any and all consents they had theretofore given to the debtor's plan.

■ Appellants have assigned a great number of errors but they have grouped them under eight different questions for our consideration. They first contend that the court erred in denying them an opportunity to be heard on the issues presented by appellants' petition and objections filed on June 5, and on the debtor's modified plan, and on the court's modification of that plan. It is clear from the facts stated that no opportunity was denied appellants to be heard on the issues referred to or any other pertinent issue. It is quite true that neither appellants nor the debtor previously knew of the conditions imposed by the court upon the modified plans, and hence neither had any opportunity of objecting to them before they were announced, but appellants raised no objections thereto for several days after they were filed, nor could they have done so consistently because they were quite favorable to the bondholders.

■ Appellants further urge that it was error for Judge Lindley to determine the issues presented upon evidence taken before Judge Wham. There is no merit in this contention. It was stipulated that Judge Lindley might determine the issues, and he notified the parties of the method of that determination. That method was followed without suggestion or objection from either party. Having tacitly agreed to the procedure, appellants will not be permitted to question it for the first time after the decision is rendered.

■ It is further urged by appellants that no notice of the court's modifications to the plan was given, nor a period fixed within which creditors and stockholders could withdraw their consents either to the debtor's modified plan or to the court's modifications. It is obvious that the court made no modifications of the plan. They were conditions to be complied with for the purpose of assuring the proper execution of the plan, all of which redounded to the benefit of the bondholders and all other creditors. Additional notice is required under 11 USCA § 207 (f) only in case the court is of the opinion that the change or modification will be materially adverse to the interest of such creditor or stockholder, and it is manifest that appellants' interests were in no way adversely affected thereby. The debtor's modified plans were filed on May 9, and from that time to June 25, when the court rendered its decision, appellants had a right to withdraw their consents, but they did not choose to do so, and they will not now be heard to complain on that account. Moreover, if they had withdrawn their consents prior to the decision it is clear that there still would have been the requisite number of effective consents present under the statute.

It is contended by appellants, however, that there was no evidence to support the court's finding that the requisite number of creditors and stockholders had filed their assent in writing. A perusal of the evidence convinces us quite to the contrary.

■ The next three contentions by appellants may be treated together. It is claimed that (1) the petition was not filed in good faith; (2) the plan was neither fair, feasible, nor undiscriminatory; (3) the court's alleged modifications did not remedy the unfairness of the plan. As to the first two of these contentions, we think the evidence discloses quite the contrary. At any rate, the court's findings in those respects are supported by substantial material evidence. That conclusion of necessity answers the last contention.

■ Finally, it is contended by appellants that the $5000 in bonds, referred to in the plan as having been purchased by appellee's attorney as trustee for two of its directors, should have been unconditionally cancelled. Those bonds were thus purchased for a consideration of $900 in the settlement of a law suit against the debtor corporation, wherein the bonds were involved. The corporation was unable to buy them, and the two directors purchased them, and thereby settled the litigation, with full knowledge and consent of the board of directors. They were paid for with money which the debtor owed the directors on their salaries, as officers of the corporation, which they had voluntarily refrained from drawing during the years of depression. These directors voluntarily offered to relinquish and cancel those bonds in case the plan were approved. That provision is in the approved plan, and under the circumstances the court had no power to cancel the bonds unconditionally and there was no necessity for doing so, because in either event the entire benefit from the can-

cellation would enure to the total benefit of the creditors.

Decree affirmed.