**NORTH AMERICAN CAR CORPORATION
v. PEERLESS WEIGHING & VENDING
MACHINE CORPORATION. (ROCK–OLA
MFG. CORPORATION et al., Interveners).**

No. 389.

Circuit Court of Appeals, Second Circuit.

. July 19, 1944.

James V. Hayes, of New York City (Benjamin Lewis, Donovan, Leisure, Newton & Lumbard, and Laurence C. Ehrhardt, all of New York City, on the brief), for appellants.

Donald W. Smith, of New York City (Satterlee & Warfield, of New York City, on the brief), for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Appellee, North American Car Corporation, was the owner of $15,000 principal amount of the 6% ten year secured sinking fund gold bonds of General Vending Corporation when the latter petitioned on June 18, 1934, for reorganization under former § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. Thereafter, on March 11, 1935, North American filed a written acceptance of a proposed plan of reorganization for General—as well as for Consolidated Automatic Merchandising Corporation, whose subsidiary it was—under which its assets were to be transferred to a new corporation, Peerless Weighing & Vending Machine Corporation; and holders of its 6% gold bonds were to receive in exchange for each $1,000 principal amount ten shares of the preferred stock and twenty shares of the common stock of Peerless. As then drafted, the plan stated no time limit within which bondholders were required to exchange their bonds; but a modified plan of June 15, 1935, provided, among other things, that Peerless was not required to issue stock to bondholders who had failed to surrender their bonds by December 31, 1937. It was this modified plan which, with certain other modifications not here important, was finally confirmed by order of the District Court dated October 14, 1935. This order stated that the court "expressly retained" jurisdiction over the debtor companies "for all purposes" until the final determination of the court as to all claims against the debtors and the payment of such as were allowed, and until Peerless should have reported consummation of the plan and "have secured the final decree or order of this Court concluding these proceedings and closing the case." It further reserved "full right and jurisdiction to make from time to time such orders amplifying, extending, confirming or otherwise modifying this order and all other orders hereinbefore entered herein as to this Court may at any time seem proper." Accordingly, by order of December 31, 1937, the time for exchange of bonds for stock in Peerless was extended until July 1, 1938.

By that final date for making the exchange, holders of some $3,599,500 of bonds, out of a total of $3,715,000 principal amount, had taken advantage of the offer. Nothing, however, had been heard from North American. It was not until March 5, 1943, that the latter first wrote to Peerless requesting that its bonds be exchanged. Failing to obtain compliance with its request, it proceeded by notice of motion dated September 24, 1943, to apply for an order modifying the original confirmation order "by extending nunc pro tunc" its time to exchange its bonds, on the grounds that it had never received any notice of a final date for such exchange and that the debtors had never reported back to the court with respect to the consummation of the plan and the proceeding had never been closed. This motion was supported by affidavits, in opposition to which the president of Peerless made affidavit showing that he had sent out, and had made return under oath to the court, at least four communications addressed to George A. Johnson, Treasurer, North American Car Corporation, 327 South La Salle Street, Chicago, Illinois, be-

tween July 11, 1935, and January 31, 1938, any one of which would have informed North American of the existence of the time limit. These included copy and notice of hearing of the modified plan, notice of confirmation, manner of making exchange of the bonds, and finally the extension of time for the exchange until July 1, 1938. In addition, affidavits were filed on behalf of two stockholders of Peerless, Rock-Ola Manufacturing Corporation and Louis M. Mantynband, to the effect that they had purchased stock in reliance upon the limitation provision of the plan. Thus, Rock-Ola, through options obtained and purchases made between February 19, 1943, and May 3, 1943, without knowledge of North American's claim, had become the owner of over 70% of each of the issues of common and of preferred stock of Peerless; while Mantynband had a lesser interest, also acquired without knowledge of appellee's claim.

The court below, however, entered its formal order dated November 19, 1943, which extended and modified nunc pro tunc the time of North American to exchange its $15,000 bonds for 150 shares of the $3 noncumulative preferred stock and 300 shares of the common stock of Peerless to and including December 15, 1943, but with right only to dividends to be declared in the future. It wrote no opinion and filed no findings. Thereafter it granted Rock-Ola and Mantynband leave to intervene as parties, and they, together with Peerless, took appeals which have been consolidated here on stipulation of the parties. We thus have before us the question whether a plan of reorganization shall be modified eight years after its confirmation to make provision for a claim which has been barred for over five years.

■ We have had occasion before to deplore the tendency of District Courts to keep reorganized concerns in tutelage indefinitely by orders purporting to retain jurisdiction for a variety of purposes, extending from complete supervision of the new business to modifications of detail in the reorganization. See Clinton Trust Co. v. John H. Elliott Leather Co., 2 Cir., 132 F.2d 299; In re Flatbush Ave.-Nevins St. Corp., 2 Cir., 133 F.2d 760; Seedman v. Friedman, 2 Cir., 132 F.2d 290. Since the purpose of reorganization clearly is to rehabilitate the business and start it off on a new and to-be-hoped-for more successful career, it should be the objective of courts to cast off as quickly as possible all leading strings which may limit and hamper its activities and throw doubt upon its responsibility. It is not consonant with the purposes of the Act, or feasible as a judicial function, for the courts to assume to supervise a business somewhat indefinitely. Nevertheless the court must retain some jurisdiction after confirmation of a plan to see that it is consummated. We have, therefore, pointed out the existence of such complementary and auxiliary jurisdiction of the court to protect its original confirmation decree, prevent interference with the execution of the plan, and otherwise aid in its operation. Clinton Trust Co. v. John H. Elliott Leather Co., supra, 132 F.2d at page 303, and authorities cited. Since the reservation of jurisdiction in the present confirmation order was in terms for this latter purpose, we cannot say that a decree purporting to modify the confirmation order merely to that end is beyond the court's power; and in general questions of reopening time limits for the presentation or other adjustment of claims must rest very largely in the sound discretion of the court, as we have recently held in Kelby v. Prudence-Bonds Corp., 2 Cir., 140 F.2d 185, 186. See, also, Mohonk Realty Corp. v. Wise Shoe Stores, 2 Cir., 111 F.2d 287, 289, certiorari denied 311 U.S. 654, 61 S.Ct. 47, 85 L.Ed. 418. But that must be a discretion legally exercised in the light of all the circumstances, and we are constrained to believe here that its exercise was erroneous and amounted to an abuse of the court's power.

■ As we have seen, the court acted only upon affidavits of the parties and gave no reasons for its act. Presumably it must have concluded that claimant had had no notice of the time limitation for the exchange of securities, for that is the only tangible reason claimant itself proffers for its long delay. On this record and without the taking of testimony we do not believe a finding that claimant in fact had no notice is justified. For its affidavit of nonreceipt of notice was couched in rather general terms, and it made no reply to the specific answer on behalf of Peerless that at least four notices of various forms were sent to its treasurer, Johnson, at its Chicago address. The inference that not all of these communications failed of arrival is rather violent; and in the face of so circumstantial a statement for Peerless and no response, much less one equally

circumstantial, from claimant, it seems more probable that the presently important details of these communications were overlooked, rather than that they were not received at all. It might be as to this that we should reverse for the taking of testimony on the point; but we have concluded that this is unnecessary, because under the circumstances we do not believe even the nonreceipt of the notices sufficient to justify the order.

■■ Though the point appears not to have been passed upon specifically, it seems clear that failure to receive notice properly given does not affect the validity of the confirmation order, and only gives grounds for appeal to the court to exercise its discretion favorably. In Mohonk Realty Corp. v. Wise Shoe Stores, supra, we pointed out that a consummated reorganization plan is binding even as against creditors who were not scheduled and did not know of the proceeding; and we held nonjurisdictional the failure to give any notice of a final order winding up an estate and enjoining further action by creditors. Section 77B, while it provides for a hearing on modification of a plan "upon notice to creditors and stockholders," with a right of withdrawal of a previous acceptance if in the opinion of the judge the modification will be materially adverse to the interest of the acceptor, sub. f, yet elsewhere it provides that the judge "shall cause reasonable notice * * * of all hearings for the consideration of any proposed plan * * * to be given creditors and stockholders by publication or otherwise," sub. c (7). Surely, therefore, the judge can have at least no greater obligation than to see that notice reasonably designed to bring the matter in ordinary course to the creditor's attention is given, and he cannot be held the insurer of actual receipt of the notice. Any other rule would make final settlement of bankruptcy cases virtually impossible and deprive bankruptcy of its oft-stressed in rem character. Cf. Hanover Nat. Bank of City of New York v. Moyses, 186 U.S. 181, 191, 192, 22 S.Ct. 857, 43 L.Ed. 1113; In re Carobine, D.C.S.D.N.Y., 8 F.Supp. 605; 3 Moore's Collier on Bankruptcy, 14th Ed. 1941, 482, 489-491, and cases cited.

■ If, therefore, the matter is only one affording potential grounds for appeal for remedial favor by the court, we think the asserted lack of receipt of notice cannot have great weight under all the circumstances in view of claimant's inexplicable delay for eight years in betraying any interest in proceedings which it already knew were intended to affect its interests. When in March, 1935, it agreed to the plan calling for the exchange of its bonds for securities of the new corporation, it was obvious that the reorganization depended upon a general fulfillment of its conditions if the business was to be rehabilitated. Nevertheless it failed to make even inquiries until March, 1943, when the reorganization had been fully consummated and persons had bought stock in the new company in firm and justified reliance upon their knowledge of the amount of stock outstanding and their belief that it would not be further diluted to take care of other bond claims. Claimant's contention that the reservation of jurisdiction in the court's order of confirmation should have warned them of just that possibility does not seem to us sound; for there was nothing in that order fairly to notify them that one of its purposes was to destroy the obviously intended force of a bar provision of the plan many years after it had become effective. Courts have been reluctant to reopen bar orders of this sort after an estate has been disposed of and the position of the parties substantially changed; many cases show denial of such petitions in circumstances more appealing than the present. Kelby v. Prudence-Bonds Corp., supra; In re Thornycroft, Inc., 2 Cir., 120 F.2d 469, 471; In re Diana Shoe Corp., 2 Cir., 80 F.2d 92, 94; Standard Steel Works v. American Pipe & Steel Corp., 9 Cir., 111 F.2d 1000; Piedmont Ice & Coal Co. v. American Service Co., 4 Cir., 130 F.2d 78; cf. In re United Cigar Stores Co. of America, 2 Cir., 82 F.2d 744, 745.

■ Nor is it an answer to such delay, to the prejudice of other parties in interest, to say that they should have taken steps to procure a final closing order from the court. True, there seems no reason why such order should not have been entered long before; but, after all, that tends to be only a formality and to be so considered by the parties, as was obviously the case here. It is the confirmation and consummation of the plan which is the culminating point of the entire proceedings; and it is unnatural, as well as inequitable, to deny finality to a fully consummated plan until the court chooses to write "finis" in some formal legal language for the clerk to

copy into the court records. Indeed, there seems considerable point in appellants' claim that the order below was a substantial modification of the plan by changing the time limit for exchange after it had already passed, and hence was improper for lack of the notice required by sub. f quoted above. It is true that this provision has been liberally interpreted so as to require notice to creditors and stockholders of the debtor corporation only when the modification in the plan will adversely affect their interests, In re H. W. Clark Co., 7 Cir., 79 F.2d 681, 684; In re Celotex Co., D.C.Del., 12 F.Supp. 1, 5; In re Nine North Church St., Inc., D.C.N.D.N.Y., 12 F.Supp. 768, 776, reversed on other grounds, 2 Cir., 82 F.2d 186, a construction codified in § 222 of the present Chapter X, 11 U.S.C.A. § 622, as made applicable here, so far as deemed practicable by the judge, by § 276, sub. c(2), 11 U.S.C.A. § 676, sub. c (2). On this record we cannot be sure whether the limited notice here given of the motion can be considered sufficient; it would seem not unlikely that there are others whose interests may be prejudiced and who should be heard. One may even wonder whether notice should not be given those other bondholders, to the extent of $100,000, who also have not exchanged their bonds and who given the opportunity well might show equities at least equaling those of claimant. But we need not pass upon the adequacy of the notice, since we are clear that upon any equitable basis claimant's motion comes much too late and must be denied.

Order reversed; motion denied.