**In re The CHARTER COMPANY, et al., Debtors.**

**Bankruptcy Nos. 84–289–BK–J–GP to 84–332–BK–J–GP and 85–1033–BK–J–GP.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 7, 1989.

See also, Bkrtcy., 97 B.R. 629.

E. Lanny Russell, Jacksonville, Fla., for Charter.

Neil E. McNally, Roanoke, Va., for Maeona Stegall.

Thomas M. Baumer, Jacksonville, Fla., for American Transtech, Inc.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon the motion filed by Maeona M. Stegall ("Mrs. Stegall"), seeking an extension of time in which to surrender preferred stock certificates pursuant to the debtor's Fourth Amended Joint Plan of Reorganization. An evidentiary hearing on the motion was held December 16, 1988, and upon the evidence presented, the Court enters the following Memorandum Opinion:

### FACTS

On April 20, 1984, The Charter Company ("Charter") and many of its subsidiaries filed for protection from creditors under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 1101, *et seq.* By orders entered April 20, 1984 and November 14, 1985, these cases have been consolidated for administration.

On August 14, 1986, the Court entered an order approving the Fourth Amended Disclosure Statement. On August 29, 1986, Mrs. Stegall cast a ballot accepting the terms and conditions of the Plan.

On December 18, 1986, the Court entered an order confirming the Fourth Amended Joint Plan of Reorganization (the "Plan") submitted in each of these cases. Jurisdiction was reserved by the Court to "determine all controversies and disputes arising under, or in connection with, the Plan."

The terms and conditions of the Plan required the debtor's shareholders to surrender certificates evidencing their ownership to American Transtech, Inc. ("American Transtech"), debtor's escrow agent, within one year following the consummation date. The Plan's consummation date was March 31, 1987, and Notice of Consummation and Availability of Distributions was published on March 26, 27, and 31, 1987, in *The Wall Street Journal, Florida Times Union* (Jacksonville, Florida), and *The Luxemburger Wort.* Thus, the last day for shareholders to surrender their cer-

tificates was March 31, 1988 (the "surrender date").

Mrs. Stegall is the beneficial owner of 3,000 shares of 8.25% cumulative convertible preferred stock (Class J) issued by Charter prior to the petition date. Paragraph 2.25 of the Plan classifies her preferred stock as a "Class 7A Interest." Paragraph 3.26 of the Plan provides that, with respect to the holders of Class 7A Interests, 6,748,605 shares of new common stock would be distributed to tendering shareholders in full satisfaction of their claims. Regarding such distribution, paragraph 4.12.3(d) of the Plan states:

> 4.12.3(d) *Surrender of certificates as condition precedent to entitlement to distribution.* As a condition precedent to the distribution by the Escrow Agent of any property to the holder of a Class ___ Interest [including Class 7A Interests] with respect to such Interest, such holder must first surrender his certificates evidencing such Class ___ Interest to the Escrow Agent in the manner and within such time periods as may be fixed in the Escrow Agreement. In the event a holder of a Class ___ Interest fails to surrender his stock or warrant certificates within 365 days after the Consummation Date in accordance with the procedures fixed in the Escrow Agreement, such holder shall be conclusively deemed to have received his distribution of New Common Stock under the Plan and shall not be entitled to receive any further distribution of property under the Plan with respect to such Class ___ Interest and all such New Common stock not claimed by such holder shall be cancelled and returned to authorized and unissued New Common Stock.

According to the Plan, if a holder of a Class 7A Interest failed to surrender his certificates within the time specified in paragraph 4.12.2(d), American Transtech is to cancel the certificates and return the unissued stock to Charter to be held as authorized and unissued common stock.

Mrs. Stegall admits having accepted the terms of the Plan but contends that Char-

ter failed to convey proper notice of the surrender date to her. Specifically, she states that she did not receive the letter of transmittal sent by American Transtech to Charter's stockholders until August, 1988. The evidence indicates that the debtor changed her address in September of 1987, and this may have led to the delay in notice. Charter had knowledge of the change of address as was evidenced by the Stegalls' receipt of other company mailings in December, 1987. Charter conceded at the hearing that the letter of transmittal may have been mailed to the former address.

According to American Transtech, the following securities were not timely surrendered:

(1) 260,952 shares of common stock;

(2) 11,584 shares of common stock unclaimed by warrant holders who failed to surrender their certificates;

(3) Approximately $297,000 principal amount of Charter's 10⅝% Subordinated Debentures (Class 6B–1);

(4) Approximately $130,000 principal amount of Charter's 14¾% Subordinated Sinking Fund Debentures due 1994 (Class 6B–2);

(5) Approximately $532,000 of Charter's 8¼% Convertible Subordinated Guaranteed Debentures due 1994 (Class 6C);

(6) Approximately $750,000 of Charter's Gulf Coast Waste Disposal Authority Pollution Control Revenue Bonds (Class 6F).

## CONCLUSIONS OF LAW

The central issue raised by the present motion is whether the Court has authority to extend the date for tendering debenture certificates after the Plan has been confirmed. Charter argues that the Court lacks such authority because (i) only the proponent of the plan may modify a confirmed plan, (ii) that Mrs. Stegall accepted the plan and is now bound by its provisions, and (iii) that extending the deadline will open the "floodgates" to further litigation and uncertainty.

■ Debtor first suggests that the movant is, in fact, asking for a modification of the Plan. Section 1127 of the Bankruptcy Code governs the post-confirmation modification of a plan. It states that the proponent of a confirmed plan may call for its modification any time prior to substantial consummation. Thus, according to the debtor, the Court lacks authority to modify the Plan because (i) the Plan's proponent [Charter] did not request a modification, and (ii) because the Plan has been substantially consummated. The Court agrees with this analysis.

Substantial consummation of the Plan was accomplished on March 31, 1987, or one year prior to the filing of the present motion. Secondly, the motion was not filed by the plan's proponent, Charter. Under § 1127 then, the Court cannot extend the deadline for surrendering the debenture certificates.

However, the Court does not find that the movant is actually seeking a modification of the Plan under § 1127. Instead, the Court is simply being asked to exercise its discretion to allow Mrs. Stegall to surrender her debenture certificates after the surrender date.

A number of cases reported prior to the enactment of the Bankruptcy Code suggest that the Court lacks the authority to extend a plan surrender deadline. For example, in *In re Industrial Office Building, Corp.*, 108 F.Supp. 878 (D.N.J.1952), the confirmed plan of reorganization required the surrender of old certificates in order to obtain new securities in the reorganized company. Like this movant, the stockholder in that case failed to timely surrender its certificates. The Court held:

> The earlier plan of reorganization was in fact a voluntary agreement to which all stockholders who accepted its terms and conditions became parties. This Court has no summary jurisdiction to alter or modify the agreement.

*Id.* at 882.

Similarly, in *In re City Stores Company*, 94 F.Supp. 266 (D.Del.1950), the Court stated:

> The cases seem to hold that a court has no jurisdiction to extend the bar order.... However, in this case there is an equity against petitioner Stern in that the capital structure of the instant company has now been altered and adjusted under the assumption of a previously existing valid bar order of this court. To readjust capital structure every time a petitioner seeks to extend a bar period would, of course, result in chaos. It may be that other potential petitioners are as favorably situated as this petitioner and consequently the court would have to compel the Debtor to readjust constantly its capital structure. It is recognized that a court will not do this in any case where intervening rights of other stockholders have come into existence, as they have in the case at bar.

*Id.* at 268–269.

Another court construed former Bankruptcy Rule 10–405(b) [derived from § 204 of the Bankruptcy Act] to limit the bankruptcy court's discretion to alter the Plan's surrender date. Said the court:

> [T]he clear intent is to fix a period of limitation within which any such creditor or stockholder may claim his distributive share or interest, so that the rights to unclaimed funds and securities may be definitely terminated.

*In re Grand Rapids R. Co.*, 28 F.Supp. 802, 803 (D.Mich.1939).

In *In re Reo Motor Car Co.*, 74 F.Supp. 142, 145 (D.Mich.1947), the court went a step further and said:

> Stockholders of Reo Motor Car Company who failed to exchange their stock for that of Reo Motors, Inc., in accordance with the Plan of Reorganization and the various orders and the final decree entered herein on October 7, 1940, have no further rights based upon such stockholdings.

The Court does not find this to be binding precedent and will look elsewhere to avoid a substantial forfeiture.

■ Bankruptcy courts have traditionally been endowed with equitable powers which enable them to avoid unjust results. Even those decisions which denied an en-

largement of time in which to surrender certificates recognize this inherent power. For instance, in *North American Car Corporation v. Peerless W. & V.*, 143 F.2d 938 (2d Cir.1944), the court stated:

> In general, questions of reopening time limits for the presentation or other adjustment of claims must rest very largely in the sound discretion of the court....

*Id.* at 940. *See also, Industrial Office Building Corp., supra*, (standard applied is whether the option to surrender is exercised "within such reasonable time as would avoid prejudice to the rights of others").

The Court has balanced the equities present and finds that the movant is entitled to an extension of time in which to surrender her preferred stock certificates. Due consideration has been given to the relative harm which may come to the debtor and its shareholders, and the Court can discern no justifiable reason for denying the movant's request. The effect of the extension of time on the debtor corporation is negligible, at best, while the corresponding impact on the movant is substantial.

The Court is also concerned with the obvious lack of proper notice given to Mrs. Stegall. Due process requires that shareholders be apprised of the last date in which they may surrender their stock certificates prior to forfeiting their rights as shareholders. Charter admits that the notice of the surrender date may have been misdirected but argues that notice by publication in several leading newspapers was sufficient to apprise the movant of her rights. The Court does not agree.

In *Charter International Oil Company v. Ziegler*, 93 B.R. 281 (Bkrptcy.M.D.Fla. 1988), the Court found notice of the bar date for filing proofs of claim published in the *Wall Street Journal*, the *New York Times*, the *Florida Times–Union* (Jacksonville, Florida), the *Houston Chronicle*, the *St. Louis Post–Dispatch*, and the *Oil Daily*, to be insufficient notice to unknown tort creditors to deprive them of their rights against the debtor.

Similarly, in *In re Charter Company*, 68 B.R. 396 (Bkrptcy.M.D.Fla.1986), the Court found this identical notice to be insufficient to bar a claim filed by a foreign corporation. As the Supreme Court has stated, "Notice by publication is a poor and sometimes hopeless substitute for actual service of notice. Its justification is difficult at best...." *New York v. N.Y., N.H. & H.R. Co.*, 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953).

In this case, notice of the consummation date was published in only three newspapers. There is no evidence that the movant subscribed to any of these publications. Thus, notice of the surrender date by publication was insufficient to apprise Mrs. Stegall of her rights. Actual notice is required.

Charter insists that the fault lies with Mrs. Stegall for failing to advise the transfer agent of her change in address. However, the evidence indicates that in December of 1987, the movant received two separate mailings from Charter relating to the reorganization. If anything, the fault lies with Charter for failing to give American Transtech notice of the change in address and, under the circumstances, the Court will permit Mrs. Stegall to surrender her certificates for exchange.

Contrary to debtor's assertions, the Court finds that the extension of time given to Mrs. Stegall will not open the "floodgates" to further litigation or uncertainty. The extent of further litigation and uncertainty is limited primarily by three factors. First, the potential number of claims is limited to those security holders who failed to timely surrender their certificates. The evidence indicates that only 260,952 shares of Class 7A interests were not tendered, representing only 5.22% of the total preferred stock outstanding. Furthermore, the names of remaining claimants are easily ascertainable by Charter and further action to advise these shareholders of their rights can be easily accomplished.

Secondly, it may be that the doctrine of "laches" will ultimately attach to those shareholders who did not timely tender their certificates or move for an extension of time in which to do so. Without indicating the point where "laches" will apply, the

Court finds that the Mrs. Stegall's motion is not barred by this doctrine.

Finally, § 1143 of the Code sets forth the outermost time limit in which security holders can ask for permission to surrender their debenture certificates. It provides:

> If a plan requires presentment or surrender of a security or the performance of any other act as a condition to participation in distribution under the plan, such action shall be taken not later than five years after the date of the entry of the order of confirmation. Any entity that has not within such time presented or surrendered such entity's security or taken any such other action that the plan requires may not participate in distribution under the plan.

Thus, at the extreme, Charter and American Transtech can rely on December 18, 1991, as being the last date on which shareholders can surrender their certificates. While this delay in distribution may be unfortunate, the Court does not find the delay alone justifies the termination of the movant's rights.

The Court will, by separate order, enlarge the time period in which Mrs. Stegall may surrender her preferred stock certificates.

ORDER GRANTING MOTION FOR EXTENSION OF TIME IN WHICH TO SURRENDER STOCK CERTIFICATES

Upon the Memorandum Opinion separately entered, it is ORDERED as follows:

1. The Motion for Extension of Time in Which to Surrender Stock Certificates filed by Maeona Stegall is GRANTED.

2. Maeona Stegall shall have until March 24, 1989, in which to surrender her preferred stock certificates.

3. American Transtech is directed to (i) accept for surrender those 3,000 shares of 8.25% cumulative convertible preferred stock (Class J) issued by the Charter Company to Maeona Stegall, and (ii) to distribute the property which the Plan provides will be distributed on account of such surrender.

DONE AND ORDERED.

See also, Bkrtcy., 97 B.R. 645.