### In re FLATBUSH AVE.–NEVINS ST. CORPORATION.

#### Appeal of FARTHING et al.

#### No. 150.

Circuit Court of Appeals, Second Circuit.

Jan. 8, 1943.

---

Garey, Desvernine & Garey, of New York City (Eugene L. Garey, William Helfer, William Francis Corson, and William J. Reinhart, Jr., all of New York City, of counsel), for petitioners-appellants.

Blecheisen & Whelan, of New York City (Edward A. Kole and Jacob Blecheisen, both of New York City, of counsel), for respondent-appellee.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

A plan of reorganization under Chapter X of the Bankruptcy Act for the Flatbush Avenue-Nevins Street Corporation was approved by the United States District Court for the Southern District of New York on April 16, 1937. In an order of consummation of this reorganization plan, dated July 28, 1938, the court reserved "full right and jurisdiction to make from time to time such other and further orders in the proceedings as it may deem proper."

Pursuant to the plan of reorganization, the properties of the debtor were transferred to the Brooklyn Fox Corporation, which was organized for that purpose. All of the capital stock of this new corporation was deposited under a voting trust, dated July 30, 1937, which was approved by the court and was part of the reorganization plan. The unique character of the property, and the large number of small bondholders, were largely responsible for the formation of this voting trust which made possible the placing of the bondholders' property in the hands of an experienced management.

The voting trust agreement, which was of five years duration, was by its terms to be "automatically extended for a further five-year period upon the vote or written consent of the holders of certificates representing at least 51% of the stock then outstanding." Under § 130-c, subd. 2, of the Real Property Law of New York, Consol. Laws, c. 50, no voting trust is valid for a longer term than five years, "unless it has been submitted to and approved by the court and no trustees appointed by such agreement shall continue to act thereunder after the expiration of its term, unless and until a new or an extension agreement has been entered into and received the affirmative approval of the holders of at least fifty-one percentum of the stock."

Unless extended pursuant to its terms, the voting trust here would have expired on July 30, 1942. On June 10, 1942, the trustees solicited "consents" to the extension of the voting trust agreement from all holders of voting trust certificates. Meanwhile, on June 16, 1942, the appellee, a certificate-holder, served a request upon the trustees for a list of the certificate-holders. At a conference with the trustees' counsel on June 18, 1942, appellee refused to state why he sought the list. The trustees denied the appellee's request, and he thereupon instituted mandamus proceedings in the New York Supreme Court, and served an order on the trustees on June 23, 1942, requiring them to show cause why the list should not be furnished him. It was in the course of these proceedings, that the appellee for the first time revealed his purpose in seeking the list, and the trustees then consented on June 26, 1942, the return day of the motion, to the entry of an order directing that he be given access to the list.

On June 29, 1942, three days after that order was entered, the list was made available to the appellee. By this date, the trustees had received "consents" representing 27,149 shares out of a total of 56,500 shares

outstanding, 51% of which would be 28,-815.[1] The appellee, on July 30, 1942, had procured revocations representing 10,923 shares, but the trustees had already announced the extension of the voting trust agreement on July 1, 1942. Inasmuch as no revocations were received by the trustees prior to July 2, 1942, the trustees claimed that these came too late.

In the lower court, the voting trustees sought an order construing the provisions of the voting trust agreement in regard to its extension, approving the procedure by which the trustees had sought to effectuate such extension, and declaring the agreement extended for five years. The court below held that the voting trust agreement had not been legally extended and had therefore expired on July 30, 1942. The judge found that the trustees had "proceeded with undue haste in declaring the trust agreement extended after they knew that a campaign to revoke the consents had been initiated by Mr. Bresnick [the appellee] and was producing results," and that therefore the referendum was not properly conducted. The court further suggested that had a list of the certificate-holders been made available to the appellee on June 16, when he first requested it, "very likely" the trustees would not have been able to obtain the required consents.

■ Congress did not intend that the Bankruptcy Court should, after an approval of a plan under Chapter X, Bankr.Act, 11 U.S.C.A. § 501 et seq., have power to remain a wet-nurse to the reorganized company. A bankruptcy court cannot obtain that power merely by inserting a provision reserving jurisdiction. In Bakers Share Corp. v. London Terrace, Inc., 2 Cir., 1942, 130 F.2d 157, we said that such a reservation gave the court no jurisdiction, with reference to a voting trust provided for in the plan, to pass upon "subsequent transactions" between the parties; in that case we went no further, in order to indicate how the plan should be carried out, than to determine the meaning of a state statute subsequently enacted; and we stated, in passing, that we did not need to consider whether our decision in that case would be

res adjudicata if the question should arise elsewhere. Here the question was not merely one of interpretation of the voting trust agreement but had to do with the "subsequent conduct" of the parties five years after the plan had been approved. To the same general effect is Clinton Trust Co. v. John H. Elliott Leather Co., 2 Cir., Dec. 9, 1942, 132 F.2d 299, although there —on the peculiar facts involved—we were able to find the court's action in liquidating a reorganized corporation, apparently under a reserved power in the plan rather than directly under the bankruptcy power, to be at most error, waived by the parties' acquiescence, rather than void for lack of jurisdiction.

■ We think, therefore, that the court below had no jurisdiction to enter its extensive order which declared and settled all the rights and obligations of the parties and which, though it dissolved the temporary stay of the proceedings in the New York court which had been granted by the court below—apparently contrary to In re Ambassador Hotel Corp., 2 Cir., 124 F.2d 435—nevertheless continued that stay for purposes of appeal. Here respondent originally challenged the jurisdiction but ultimately acquiesced in it and now joins with the trustees to urge us to act in the premises. Even though our action must be as restricted as it was in the London Terrace case, we think that similar action here, indicating how the plan as to the voting trust is to be finally effectuated, is possible. We have neither the plan nor the court's full order before us, but it seems reasonable to conclude that the voting trust was an important feature of that plan, which necessarily suggests that the means of finally renewing or getting rid of that voting trust is also important. Accordingly, we feel justified in saying here that we do not believe a fair meaning of the plan, read in the light of the state statute, permitted the trustees to take the votes, insuring their own continuance in office, at any time they chose and then to close the books before the original period of the trust had terminated; we believe that the voting remained open until July 30, 1942, at which time the votes were not in favor of the

---

[1] The parties agreed upon the following figures as representing an accurate summary of the balloting: *Shares*

| | Shares |
|---|---|
| Assents to and including July 1, 1942 | 30,857 |
| Revocations of above to July 30, 1942 | 10,923 |
| Assents after July 1, 1942 (not limited to July 30, 1942) | 2,202 |
| Revocations of the assents noted immediately above | 356 |
| Non-Assents to extension | 5,734 |

continuance of the trust. Beyond this we cannot go.

The order below will be modified to provide for the statement we have just made, and that either party may bring further proceedings in a court of proper jurisdiction.