## TOWERS HOTEL CORPORATION v. LAFAYETTE NAT. BANK OF BROOKLYN IN NEW YORK, et al.

### No. 141.

Circuit Court of Appeals, Second Circuit.

Feb. 27, 1945.

146

Ehlermann & Crawford, of New York City (Carl Ehlermann, of New York City, of counsel), for Towers Hotel Corporation, appellant.

Walter Jeffreys Carlin, of New York City (Pallister Hamilton Feely, of New York City, of counsel), for Lafayette Nat. Bank of Brooklyn in New York, mortgage trustee, appellee.

Levy, Kornblum & Katz, of Brooklyn, N. Y. (Harry K. Nadell, of Brooklyn, N. Y., of counsel), for William C. Goodson, a certificate holder.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

In 1936 Clark and Willow Streets Corporation owned the Towers Hotel in Brooklyn, New York, which was subject to a mortgage and also to large arrears of taxes. The principal amount of the mortgage was originally $1,100,000, but was later reduced to $1,067,000. Interest was at the rate of 6%, that is, 5½% net to certificate-holders.

On March 1, 1934 Clark and Willow Corporation defaulted in payment of mortgage interest. The bond and mortgage were dated March 31, 1931 and were made to Title Guarantee and Trust Company which issued participation certificates in it guaranteed by the Bond and Mortgage Company now in liquidation.

In December 1935, Clark and Willow Corporation filed its petition for reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. §.207, in order to adapt the terms of the mortgage to actual facts. By the plan of reorganization the bond and mortgage were assigned to Lafayette National Bank of Brooklyn for the proportionate benefit of the holders of outstanding certificates and the Towers Hotel with its equipment and any other assets owned by the debtor in reorganization were conveyed to the Towers Hotel Corporation, a company formed to carry out the plan, which was confirmed by the District Court on November 30, 1937.

In pursuance of the plan of reorganization the Towers Hotel Corporation assumed payment of the existing mortgage which was extended for a period of five years—that is, to May, 1943, with interest at the rate of 1% a year, plus "if earned" interest up to 2% a year during the first two years, and with interest at the rate of 2% a year during the third, fourth and fifth years, plus "if earned" interest up to 2% a year. The company also agreed to pay its net earnings each fiscal year to the mortgage trustee to be devoted to the payment of tax arrears, "if earned" interest, a sinking fund and interest accrued to the effective date, and also agreed that no dividends should be paid.

During the five year period for which the mortgage was extended under the plan Towers Hotel Corporation paid arrears of taxes and also paid $10,421.43 into the sinking fund for the retirement of outstanding certificates. It also assumed payment of arrears of interest accrued to May 5, 1938, the effective date of the plan, which amounted to $274,678.40. It is stated that the corporation also paid $70,472.78 on account of such arrears of interest. At the end of the five year extension, Towers Hotel Corporation, which had operated the hotel, applied for a further extension of the due date of the bond and mortgage and for certain other modifications which it regarded as within the contemplation of Article V of the plan of reorganization and

Article II, Section H, of the declaration of trust by Lafayette National Bank which the latter had made to conform to the provisions of the plan.

Article V of the plan was as follows:

"Further Extensions and Modifications of the Mortgage.

"Before or after the maturity of the bond and mortgage according to this extension or any later extension hereunder, the Mortgage Trustee may agree with the New Company upon any further extension and/or any other modification of the bond and mortgage provided any such further or other extension and/or modification have the approval of the Court upon such notice to Holders of Modified First Mortgage Certificates as the Court may prescribe and have the written approval of the holders of two-thirds in principal amount of the Modified First Mortgage Certificates then outstanding. If the Voting Trust is still in force, such extension or modification shall also require the written approval of a majority of the Voting Trustees, but the consent of holders of Voting Trust Certificates, or, after termination of the Voting Trust, the consent of stockholders, is not required to any such extension or modification.

"Nothing contained in this Plan, or in the Declaration of Trust, or in the extension or modification agreement to be executed by the Mortgage Trustee, or any subsequent extension or modification agreement, shall be construed to reduce the rate of interest from 6% provided in the bond and mortgage except only for the period and to the extent provided in the extension and modification under the Plan, or any later extension or modification agreement hereunder."

The Declaration of Trust contained an appropriate corresponding provision, Article II, Section H, which reads as follows:

"H. Before or after the maturity of the bond and mortgage according to the extension under the Plan, or any later extension hereunder, the Mortgage Trustee may agree with the New Company upon any further extension and/or any other modification of the bond and mortgage provided any such further or other extension and/or modification have the approval of the Court upon such notice to holders of Modified First Mortgage Certificates as the Court may prescribe and have the written approval of the holders of two-thirds in

principal amount of the Modified First Mortgage Certificates then outstanding. If the Voting Trust is still in force, such extension or modification shall also require the written approval of a majority of the Voting Trustees, but the consent of holders of Voting Trust Certificates, or, after termination of the Voting Trust, the consent of stockholders, is not required to any such extension or modification.

"Nothing contained in this Plan or in the Declaration of Trust, or in the extension or modification agreement to be executed by the Mortgage Trustee, or any subsequent extension or modification agreement, shall be construed to reduce the rate of interest from 6% provided in the bond and mortgage except only for the period and to the extent provided in the extension and modification under the Plan, or any later extension or modification agreement hereunder."

The District Court by two orders of November 30, 1937 and December 27, 1939 confirmed the above-mentioned plan of reorganization and discharged the debtor Clark and Willow Streets Corporation from all its liabilities and terminated all the rights of its stockholders except as provided in the plan and terminated the proceeding except that it retained jurisdiction as provided in the plan and the declaration of trust "with respect to the matters made referable to this Court by such Plan and Declaration, namely, the matters referred to in subdivision P of Article IV and in Article V and in the fifth paragraph of Article VII of the Plan of Reorganization, and in subdivisions A, D, H, K and M of Article II of the Declaration of Trust, some or all of which matters are also described as referable to this Court in the Voting Trust Agreement or in the Agreement of Extension and Modification of the Mortgage approved by order of this Court, dated November 30, 1937."

We have already quoted the provisions of Article V of the plan relating to modification of the mortgage through an agreement of extension upon approval of the court and of two-thirds in principal amount of certificate holders. The fifth paragraph of Article VII of the plan is not pertinent to the questions before us. Article IV (P) of the plan also referred to in the provisions of the order of November 30, 1937 reads as follows:

"(P) The New Company, with the consent of the Mortgage Trustee and the Voting Trustees, but without action by the holders of the Voting Trust Certificates, may raise moneys necessary to pay past due taxes and penalties and secure the payment thereof by a new mortgage which may be a prior lien upon the property and assets of the New Company and the Mortgage Trustee shall subordinate the bond and mortgage to such new mortgage, provided always that such loan have the approval of the Court upon such notice to Holders of Modified First Mortgage Certificates as the Court may prescribe."

The modifications of the mortgage which are sought are an extension of the date of payment for five years, that is to May 5, 1948, at a fixed rate of interest to remain the same as under the former extension. In computing net earnings it is asked that the expense of additions and improvements, even though of a capital nature, not exceeding $30,000 a year on the average should be deductible. It is also asked that $50,000 instead of $25,000 might be withdrawn from earnings for working capital. It is also proposed that payments to the mortgage trustee over and above fixed interest should be limited to $50,000, whereas Article IV(E) and (H) of the original plan required that "net earnings" as defined in the plan should be paid to the mortgage trustee regardless of the amount. Any other modifications sought are unnecessary to mention.

 Judge Galston, who passed upon the application, held that the court had not reserved the right to modify the plan in respect to the items covering expenses for improvements, additions to working capital and limitation of payments to the mortgage trustee over and above fixed interest. He accordingly denied the application for approval of the proposed modifications of the mortgage, but with leave to make appropriate application for an extension and modification with special reference to such provisions of the mortgage as would be affected by the desired modifications. His decision seems to have been due to the belief that he lacked the power to allow the extensive changes proposed, because of the limited scope of the jurisdiction he had reserved in his decree of December 27, 1939. The only specific reservation of power to modify the mortgage in the order of December 27, 1939 related to an extension under Article V, a subordination through a new mortgage to raise money to pay past due taxes and penalties under Article IV(P), and to powers of the voting trustee under the fifth paragraph of Article VII. Modifications other than these were not deemed reserved by the general words "or other modification" contained in Article V. Judge Galston's interpretation of the powers reserved in his decree seems reasonable both under the rule of ejusdem generis and under the reasoning of our recent decisions in which we held that in confirming a plan of reorganization the court may only retain jurisdiction in order to protect its decree, to prevent interference with the execution of the plan and to aid otherwise in its operation, and may not, through the device of retaining jurisdiction, keep a debtor in tutelage and burden the court with future supervision of the reorganized estate. North American Car Corporation v. Peerless Weighing & Vending Mach. Corporation, 2 Cir., 143 F.2d 938; In re Flatbush Ave.-Nevins St. Corporation, 2 Cir., 133 F.2d 760; Seedman v. Friedman, 2 Cir., 132 F.2d 290; Clinton Trust Co. v. John H. Elliott Leather Co., 2 Cir., 132 F.2d 299; Bakers Share Corporation v. London Terrace, 2 Cir., 130 F.2d 157. These decisions do not directly control the present appeal, for Judge Galston's interpretation of the power he reserved was right and his termination of the former proceeding, except as to the matters reserved, was final and res judicata as to the other' rights of the parties not left open. In re Farmers Loan & Trust Co., 129 U.S. 206, 9 S.Ct. 265, 32 L.Ed. 656; French v. Shoemaker, 12 Wall. 86, 20 L.Ed. 270. As no one complains of the right which Judge Galston has given Towers Hotel Corporation under his order of May 12, 1944 to apply for an extension of the bond and mortgage it is unnecessary for us to discuss whether even this limited right should have been denied under our decisions which we have cited. It is enough for the present to hold that the modifications which Judge Galston refused to allow were not within the terms of the reservation of jurisdiction in his order of December 27, 1939 and for that reason could not rightly have been granted. Such a power to modify as he attempted to reserve ought in any event to be construed narrowly, in view of the decisions of this court which we have referred to.

For the foregoing reasons the order is affirmed.