In re NEW YORK, N. H. & H. R. CO.

No 201, Docket 20855.

Circuit Court of Appeals. Second Circuit.

June 29, 1948.

Writ of Certiorari Denied Nov. 15, 1948.

See 69 S.Ct. 138.

FRANK, Circuit Judge, dissenting.

See also 64 F.Supp. 487.

Paul E. Troy, of Boston, Mass., for appellant.

H. J. Wells, of New Haven, Conn. (J. H. Gardner, Jr., of New Haven, Conn., of counsel), for appellee.

Before SWAN, CLARK and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal from the consummation order and final decree entered on September 11, 1947 in reorganization proceedings of New York, New Haven and Hartford Railroad Company which were begun in 1935 in the bankruptcy court for the District of Connecticut pursuant to section 77 of the Bankruptcy Act, 11 U.S. C.A. § 205. Boston and Providence Railroad Corporation, whose trustee is the appellant, is being reorganized in the bankruptcy court for the District of Massachusetts. For an understanding of the appeal a brief statement is required of the relations which have existed between these two railroads before and during the New Haven proceedings. In 1888 Boston and Providence leased its lines for 99 years to Old Colony Railroad Company, which is a secondary debtor in the New Haven proceedings.[1] In 1893 Old Colony made a 99 year lease of its railroad properties, including its leasehold interest in Boston and Providence, to New Haven, and the latter was operating the lines when its reorganization proceedings were commenced. Pursuant to orders made in the New Haven proceedings, these leases were rejected by the trustees of the respective lessees, and thereafter the properties of Boston and Providence were operated for the account of that corporation by the New Haven trustees pursuant to section 77, sub c (6) of the Bankruptcy Act, 11 U.S.C.A. § 205, sub. c (6).[2] Such operation has given rise to a prior lien claim of large amount against Boston and Providence.[3] The New Haven plan of reorganization, which has already been confirmed,[4] contains provisions which contemplate acquisition by the New Haven of the properties of Boston and Providence in the event of confirmation of the Boston and Providence plan of reorganization by the bankruptcy court for the district of Massachusetts. The provisions of New Haven's plan of reorganization require the purchase price for the Boston and Providence properties to be paid in specified securities and to include cancellation of the New Haven's prior lien claim against Boston and Providence and cancellation of the latter's unsecured claim against New Haven for damages arising from the rejection of its 99 year lease.[5] Similar provisions are contained in the Boston and Providence plan of reorganization. As confirmation of that plan had not occurred before the making of the order now on appeal, the order provided for consummation of the major part of the New Haven plan upon the consummation date [6] but did

---

[1] Providence, Warren & Bristol Railroad Company and Hartford Connecticut Railroad Company are also secondary debtors.

[2] See Palmer v. Warren, 2 Cir., 108 F. 2d 164, affirmed Warren v. .Palmer, 310 U.S. 132, 60 S.Ct. 865, 84 L.Ed. 1118.

[3] From June 6, 1936 to December 31, 1946 the claim amounts to more than $12,000,000.

[4] See Old Colony Bondholders v. New York, N. H. & H. R. Co., 2 Cir., 161 F.2d 413, certiorari denied Institutional Group for Boston Terminal Bonds v. New York, N. H. & H. R. Co., 331 U.S. 859, 67 S. Ct. 1755, 91 L.Ed. 1866.

[5] By stipulation of the parties, approved by the Connecticut bankruptcy court, this claim was valued at $10,000,000.

[6] Thereafter fixed as 3 P. M., September 18, 1947.

not provide for consummation of the provisions relating to acquisition of the Boston and Providence properties; and the court reserved jurisdiction by Article XI-2(o) of its order:

"To consider and act on any questions respecting claims between the Reorganized Company and the Boston and Providence Railroad Corporation or its Trustee arising out of the provisions of the Plan herein relating to the Boston and Providence Railroad Corporation or arising out of the operation of the lines of the Boston and Providence by the Bankruptcy Trustees or the Reorganized Company."

The appellant contends that the court erred in the following respects: (1) in terminating the authority of the New Haven trustees and the Old Colony trustees (who are the same persons) to operate the lines of railroad of Boston and Providence without first requiring a certificate to be obtained from the Interstate Commerce Commission authorizing abandonment of the operation of the Boston and Providence lines by such trustees, in accordance with section 1(18) of the Interstate Commerce Act, 49 U.S.C.A. § 1(18); and (2) in authorizing the reorganized New Haven to operate said lines without having first obtained the approval and authorization of the Interstate Commerce Commission fixing the terms and conditions of such operation, in accordance with section 5(2) of the Interstate Commerce Act, 49 U.S.C.A. § 5(2); and (3) in reserving jurisdiction to consider claims between the reorganized New Haven and the Boston and Providence, or its Trustee, arising out of the operation of said lines by the reorganized New Haven.

■ The appellee has moved to dismiss the appeal on the ground that, because of the above-quoted reservation by Article XI-2(o) of the order, the district court did not pass on the issues raised by the appellant but left them still open for determination in the future, and the order consequently constitutes merely an unreviewable exercise of the district court's discretion, notwithstanding the provision of the Bankruptcy Act authorizing appeals from interlocutory orders, 11 U.S.C.A. § 47, sub. a. The appellee's argument is not without considerable persuasive force. Nevertheless we are not convinced that the appeal must be dismissed. After all the district court did decide, over the appellant's objection, that it could rightfully make the reservation of jurisdiction. A prompt determination of its power to do so is obviously desirable and is not, we believe, beyond the appellate jurisdiction conferred by section 47, sub. a. Consequently, we turn to the merits of the appeal.

Appellant's points (1) and (2) are interrelated and may conveniently be considered together. They are based on the premise that cessation of operation of the Boston and Providence lines by the New Haven trustees constitutes an abandonment of such operation, requiring a certificate by the Interstate Commerce Commission that "the present or future public convenience and necessity permit of such abandonment," [7] and on the further premise that the assumption of operation of the lines by the reorganized New Haven cannot be authorized until the Commission shall have fixed terms and conditions of operation found by it "to be just and reasonable." [8] These premises are fallacious in our opinion. Section 77, sub. c(6) of the Bankruptcy Act, 11 U.S.C.A. § 205, sub. c(6), provides that if a lease of a line of railroad is rejected and the judge shall determine after hearing that it would be impractical and contrary to the public interest for the lessor to operate said line, "it shall be the duty of the lessee to continue operation on or for the account of the lessor until the abondonment of such line is authorized by the Commission in accordance with the provisions of section 1 of the Interstate Commerce Act as amended." That this provision controlled up to the consummation date, September 18, 1947, is conceded.[9] But the appellant argues that it does not control "after the

---

[7] 49 U.S.C.A. § 1, par. (18).

[8] 49 U.S.C.A. § 5 (2) (b).

[9] The appellant admits, as he must, that the term "lessee" as used in the statute includes operation by the trustees of the lessee. Warren v. Palmer, 310 U.S. 132, 139, 60 S.Ct. 865, 84 L.Ed. 1118.

reorganization proceedings have been terminated." However, the assumption that the reorganization proceedings have been terminated with respect to the lines of the Boston and Providence is contrary to the fact. Those lines will continue to be operated by the "lessee" subject to such orders as the bankruptcy court may hereafter make pursuant to the jurisdiction reserved by the order on appeal. It would seem the extreme of technicality to hold that the transfer of operation from the lessee's trustees in reorganization to the lessee itself, whose operation of the Boston and Providence lines is still subject to the bankruptcy court, is an "abandonment" of operation of those lines. We reject it. Nothing is to be found in Smith v. Hoboken R. Warehouse & S. S. Connecting Co., 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123, 168 A.L.R. 497, or Thompson v. Texas Mexican R. Co., 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 to sustain the appellant's position. Indeed, he concedes that the precise question "is one of first impression."

It is argued that the reorganized New Haven should be considered a new and different corporation because under the New Haven plan of reorganization the Reorganization Committee was permitted either to use the existing debtor as the vehicle to put the plan into effect or to cause a new corporation to be formed for that purpose. It would seem that the word "lessee" in section 77, sub. c(6) might be interpreted broadly enough to include a new corporation, when the plan of reorganization contemplates that operation of the system may be effected by that method. But that question need not be now decided. In fact, the system is to be operated by the existing lessee; there has been no abandonment of operation of the Boston and Providence lines. Consequently the institution of proceedings under section 5(a) (2) of the Interstate Commerce Act, 49 U.S.C.A. § 5(a) (2), was not a condition precedent to making the order on appeal.

The appellant's third assignment of error is grounded on cases under comparable provisions of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., in which this court has held that in con-

firming a plan of reorganization the court "may not, through the device of retaining jurisdiction, keep a debtor in tutelage and burden the court with future supervision of the reorganized estate." Towers Hotel Corp. v. Lafayette Nat. Bank, 2 Cir., 148 F.2d 145, 148, and cases there cited. But, as that decision recognizes, jurisdiction may be retained by the court "in order to protect its decree, to prevent interference with the execution of the plan and to aid otherwise in its operation." The case at bar falls within the stated exceptions. The reservation of jurisdiction to act on questions respecting claims between the reorganized New Haven and Boston and Providence arising out of the plan of reorganization or out of the operation of the lines of Boston and Providence by the reorganized New Haven was not an attempt to keep the debtor in tutelage to the court, but was an appropriate adaptation of its decree to the peculiar circumstances and practical difficulties inherent in a situation where the entire plan could not be put into operation at one time because acquisition of the Boston and Providence properties was dependent upon action of the bankruptcy court in Massachusetts which had not yet occurred. The status quo with respect to the Boston and Providence lines necessarily had to be preserved by retaining jurisdiction with respect thereto until that portion of the plan should be ripe for affirmative action by the Connecticut court. The claims arising out of the continued operation of such lines are clearly within the court's reserved power so long as the plan remains to be carried out in its Boston and Providence features. Upon the argument we were told that subsequent to entry of the order on appeal the Massachusetts court had disapproved the plan of reorganization for Boston and Providence, but that fact is no part of the record on appeal. What effect, if any, it may have in requiring a modification of the Boston and Providence features of the New Haven plan is for the Commission, in the first instance, and then for the district court, to determine. If it could be deemed relevant at all on the present appeal, it would only support the

correctness of Judge Hincks' reservation of jurisdiction.

What the appellant fears is that operation by the reorganized New Haven of the Boston and Providence lines may continue for an indefinite time to pile up annual deficits to be charged against his corporation. The order, however, does not preclude him from presenting this grievance, if it be one, either to the Commission or to the district court, and it would obviously be inappropriate for this court at the present time to indicate any opinion on that question.

Finding no error in the order on appeal, we affirm it.

FRANK, Circuit Judge (dissenting).

Although with some doubts, I agree with my colleagues' conclusion that, under § 77, sub. c(6), the reorganized New Haven may validly continue to operate the lines of the B & P (Boston and Providence) until such time as the Interstate Commerce Commission otherwise orders. I agree, too, that the court below properly retained jurisdiction of claims by the B & P against the Bankruptcy Trustees of the New Haven arising from the operation, by those Trustees, of the B & P Lines.

I think, however, that it was error to "retain" jurisdiction of claims of the B & P against the reorganized New Haven arising from its operations of the B & P lines after the discharge of the New Haven Trustees. What I consider the fatal flaw in my colleagues' reasoning in disposing of that issue is, I think, revealed in their statement that it is "contrary to the fact" to make "the assumption that the reorganization proceedings [in the court below] have been terminated with respect to the lines of the Boston and Providence." [1] That statement necessarily rests on the implied proposition that the court below has had within its jurisdiction the "reorganization with respect to the lines of the B & P," and has not yet "terminated" that jurisdiction. But that proposition is contrary to fact: The "reorganization" with respect to the lines of the B & P has never been within that court's jurisdiction. It has been, and is now, in the exclusive jurisdiction of the federal district court for the District of Massachusetts. The court below therefore had no authority to deal with the reorganization of the B & P or with any sale or other disposition of its properties. For that reason, the New Haven Plan did no more· than this concerning those properties: it contained an offer to the B & P for the acquisition of those properties by the reorganized New Haven. In other words, the B & P was nothing but an offeree. That Plan recognized that the acceptance of the offer required the approval of the Massachusetts District Court. It follows that that part of the New Haven Plan will never become operative if the Massachusetts court refuses to give that approval, with the result that the offer is not accepted. In that event, if the reorganized New Haven still desires to acquire the B & P properties, it will have to make the B & P a better offer. As such a revised offer may perhaps necessitate a revision of the New Haven Plan, the court below had authority to retain jurisdiction of the New Haven, to the extent necessary to permit that court to consider and pass upon an alteration in that Plan. But I fail to understand how that fact gave that court the power to consider and pass upon claims of the offeree, the B & P, against the reorganized New Haven, arising out of its operation of the B & P properties.

The reorganized New Haven can no longer legitimately be wet-nursed by its reorganization court. Wherefore, the court below, concededly, could not validly retain jurisdiction over claims made by shippers or passengers, stemming from the operations of the reorganized New Haven. See Towers Hotel Corp. v. Lafayette National Bank, 2 Cir., 148 F.2d 145, 148; North American Car Corp. v. Peerless Weighing & Vending Machine Corp., 2 Cir., 143 F.2d 938, 940; In re Flatbush Avenue-

---

[1] This statement appears in my colleagues' discussion of the first two contentions made by appellant. But the reasoning implicit in that statement underlies my colleagues' discussion of the appellant's third contention which I am here considering.

Nevins Street Corp., 2 Cir., 133 F.2d 760, 762; Clinton Trust Co. v. John H. Elliott Leather Co., 2 Cir., 132 F.2d 299, 303, 304; Bakers Share Corp. v. London Terrace, 2 Cir., 130 F.2d 157, 159.

To my mind, claims by the B & P against the reorganized New Haven, because of its operations of the B & P lines, are no different in that respect. If any such claims should arise, the B & P (or its Bankruptcy Trustee) should be permitted to assert them just as if the New Haven had never been in reorganization (i. e., without seeking relief in the court which reorganized the New Haven). Nothing in § 77, sub. c(6) requires the submission of those claims to that court.[2] Nor is such "retention" of jurisdiction over the adjudication of such claims—which retention, under my colleagues' decision, may last for years[3]—needed by that court "in order to protect its decree, to prevent interference with the execution of the plan, and to aid otherwise in its operation."[4] True, those claims might augment the consideration which the reorganized New Haven may have to pay if the present offer to the B & P is rejected and if the New Haven then wants to acquire the B & P properties; true, too, the court below may be concerned with alterations in the New Haven Plan on account of such augmented consideration. But those facts, I think, do not bring the adjudication of those claims within that court's jurisdiction—any more than if the New Haven Plan had contained an offer to an independent railroad, never theretofore operated by the New Haven, for the acquisition of that independent railroad's properties.

The "reservation" is objectionable, I think, no` because it aims to keep the New Haven "in tutelage" but because it reaches out to control and puts "in tutelage" another railroad whose reorganization and property-dispositions are not the business of the court below. Such a result finds no justification in what we have said in Towers Hotel Corp. v. Lafayette National Bank, 2 Cir., 148 F.2d 145, 148, or elsewhere.

[2] I agree that, should the offer to the B & P lines be finally and forever rejected, and should the New Haven Plan be in all respects fully consummated, nevertheless § 77, sub. c (6) would call for operation of those lines by the reorganized New Haven until the Interstate Commerce Commission otherwise ordered. My colleagues seem to me (perhaps I am wrong) to suggest that, in such circumstances, those operations, until the Commission so acted, would still "be subject" to the court below. I see no warrant in the statute for such a conclusion.

[3] As I understand my colleagues' opinion, "retention" of jurisdiction over such claims is to continue until the B & P accepts the present offer or some better offer or until negotiations for the acquisition of the B & P lines have ended in a rejection of any offer whatever. That point may not be reached for years.

[4] Towers Hotel Corp. v. Lafayette National Bank, 2 Cir., 148 F.2d 145, 148.