### In re ELLESS CO.
### BLAIR et al. v. FINAN.
### No. 10707.

United States Court of Appeals
Sixth Circuit.
May 2, 1949.

926

Harold M. Shapero, and Edward T. Goodrich, both of Detroit, Mich., for appellants.

Ben. O. Shepherd, of Detroit, Mich. (Ben O. Shepherd and John A. Hamilton, both of Detroit, Mich., on the brief), for appellee.

Before SIMONS, McALLISTER and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

On April 12, 1938, the District Court for the Eastern District of Michigan entered an order confirming a plan of reorganiza-

tion of The Elless Company, debtor, a Michigan corporation, under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The Elless Company owned and operated the Whittier Hotel, a large residential and transient hotel overlooking the Detroit River. The premises were subject to trust mortgages securing bonds aggregating more than $3,300,000 and the company was indebted in considerable amounts of money to other creditors, which it was unable to pay. The plan of reorganization provided for a new company to take over the hotel and to issue its stock to the creditors, stockholders, and bondholders of the debtor. Holders of unsubordinated first mortgage bonds were to be allocated 90% of the stock and the balance of 10% was allocated to other creditors and to the stockholders of the debtor. The plan further provided that the 90% of the stock allocated to the mortgage bondholders was to be placed in a voting trust; that the trust was to have three trustees, to be appointed by the court; and that it was to continue for a period of eight years, terminating on May 1, 1946. Upon the approval of the plan by two-thirds of the creditors, as required by statute, the court confirmed it; a new Michigan corporation known as the Whittier Corporation, was organized, took title to the hotel, and issued the stock in accordance with the plan; and the trust agreement was carried out, the stock being placed in the voting trust for an eight-year period, and trustees of the voting trust, being appointed by the court. The order confirming the plan of reorganization provided:

"This court reserves jurisdiction over the stock trust aforesaid and over the property of the new corporation and over the trustees from time to time acting as trustees under said trust agreement for the purpose of supervising the acts and doings of such trustees and appointing and removing them, and for the purpose in all respects of protecting and safeguarding the rights of the holders of trust certificates from time to time outstanding. Each and all of the holders and owners of trust certificates from time to time outstanding be, and they are hereby, forever jointly and severally enjoined from commencing or prosecuting any proceedings of any nature whatsoever against the new corporation or any of its property or against the trustees or any of them without first obtaining the approval of this court after due notice to all parties in interest.

"The court reserves jurisdiction herein to enter such further orders as may hereafter be deemed necessary or proper in connection with the carrying out of the terms and provisions of the said plan of reorganization as approved and confirmed herein."

The trust agreement approved by the court provided: "This Trust Agreement shall terminate, in any event, on the 1st day of May, 1946, without notice by or to, or action on the part of the Trustees, or any other parties hereto, but it may be terminated at any earlier date by resolution of a majority of the Trustees, or by the Court, in the manner herein provided. * * * In case of termination by the Court, such termination shall become effective upon the entry of the order by the Court, or at such later date as shall be specified by the Court in such order."

Under the voting trust, it was provided that a majority of the trustees, with the approval of the court, could amend the trust agreement upon giving twenty days' notice to stockholders of the proposed amendment, or modification, provided that it would not become effective if, within twenty days, holders of 25% of the stock certificates objected thereto, unless holders of 51% of the certificates consented thereto in writing.

On February 28, 1946, the trustees filed a petition with the Court reciting that, acting under the foregoing provision, they had adopted a resolution amending the trust agreement by extending the term of the voting trust from May 1, 1946 to May 1, 1951. The petition asked the court to enter an order approving the execution of an instrument attached to the petition, amending the original voting trust agreement as to its term, and including the following new sections:

"Section 1. This Trust Agreement shall terminate, in any event, on the 1st day of May, 1951, without notice by or to, or action on the part of the Trustees, or any other parties hereto, but it may be terminated at any earlier date by resolution of

a majority of the Trustees, or by the Court, in the manner herein provided.

\* \* \* \* \* \*

"In case of termination by the Court, such termination shall become effective upon the entry of the order by the Court, or at such later date as shall be specified by the Court in such order."

The district judge who entered the original order confirming the reorganization plan, thereupon entered an order approving the proposed amendment increasing the life of the voting trust for an additional five years until 1951, and directing notice to be given all certificate holders, and further ordered that after such notice had been given, the proposed amendment would become effective on April 3, 1946, unless on or before that date, the holders of certificates representing 25% of the capital stock of the Whittier Corporation should advise the trustees in writing of their objection to, and dissent therefrom. It was further provided in the order: "That this court hereby reserves jurisdiction of this matter for the purpose of determining any and all controversies that may arise with respect to said proposed amendment and for the purpose of giving any instructions to said Trustees that may be necessary or proper in connection with said proposed amendment."

Objections not having been made by the holders of the certificates before the date prescribed in the order approving the amendment, it was considered that the original trust agreement was, accordingly, amended and the term of the trust extended an additional five years.

On May 20, 1947, however, appellee Finan filed his petition to set aside the order of the court approving the extension of the term of the trust agreement, to discharge the trustees of the voting trust and terminate their authority, and to enjoin permanently such trustees from voting any of the stock confided to them by virtue of the trust. Among the reasons asserted in support of the petition were (1) that the order attempted to make effective an agreement in violation of Section 34 of Act 327 of the Public Acts of Michigan of 1931, which prohibits shareholders from entering into a voting trust agreement for a period exceeding ten years; (2) that the order attempted to make ineffective the provision of the articles of incorporation of the Whittier Corporation limiting the term of the trust agreement to eight years; and (3) that the court lacked jurisdiction to enter the order because the plan of reorganization had been successfully consummated. Answer to the petition was filed by the Whittier Corporation and the trustees of the voting trust; and two holders of certificates, representing shares of stock of the corporation, were allowed to intervene and file answers.

On the hearing, the district court entered a final order terminating the voting trust and directing the trustees to deposit with the depositary named in the trust agreement all assets, including the stock certificates evidenced by the trust certificates, and with authority to such depositary to deliver such assets, including the stock certificates in exchange for the trust certificates, to the persons entitled to receive them. It was further provided in the order that upon such deposit of certificates by the trustee for delivery to the owners, all liability of the trustees for the delivery thereof should cease, and the trustees would not be required to take any further action of any nature under the trust agreement. From this order, the Whittier Corporation, the trustees of the voting trust, the intervening petitioners, hereafter referred to as appellants, unite in one appeal. Petitioner Finan, hereafter referred to as appellee, appeals on grounds that the order of the court was inadequate in not granting sufficient relief.

Appellants contend that the amendment extending the life of the voting trust was valid; that the termination of the trust by the court sua sponte was beyond its jurisdiction; and that even though its reserved jurisdiction was broad enough to authorize the termination of the trust, its action in terminating it was an abuse of discretion.

The only reason given to the court by the trustees, in their petition, for approval of the amendment increasing the life of the voting trust was that they "believe that the only way in which the owners of small amounts of stock now in said Vot-

ing Trust can be adequately protected is by a continuance of the trust created by said agreement." In confirming a plan of reorganization, the court may only retain jurisdiction in order to protect its decree, to prevent interference with the execution of the plan, and to aid otherwise in its operation, and may not, through the device of retaining jurisdiction, keep a debtor in tutelage. Towers Hotel Corp. v. Lafayette National Bank, 2 Cir., 148 F.2d 145. It is true that the court retains certain jurisdiction in a reorganization proceeding, after confirmation of a plan, to see that it is consummated. North American Car Corporation v. Peerless Weighing & Vending Mach. Corporation, 2 Cir., 143 F.2d 938. But any reservation of jurisdiction beyond what is requisite to effectuate a plan of reorganization is beyond the power of the reorganization court. Reese v. Beacon Hotel Corp., 2 Cir., 149 F.2d 610. See also In re Flatbush Ave.—Nevins St. Corporation, 2 Cir., 133 F.2d 760. The order extending the voting trust agreement was not necessary to effectuate the plan of reorganization. It was unnecessary for the protection of the original order confirming the plan, or to prevent interference with its execution. It was beyond the jurisdiction of the district court, acting through another judge in prior proceedings, to enter the order extending the life of the voting trust. Furthermore, the order of the court was in violation of the Michigan law limiting the term of a voting trust to ten years. See Appon, et al. v. Belle Isle Corp. et al., Del.Ch., 46 A.2d 749; Gaskill v. Gladys Belle Oil Co., 16 Del.Ch. 289, 146 A. 337.

The plan of reorganization was adopted, the voting trust set up, and the voting trustees appointed by the court for one purpose—to relieve the debtor from the pressure of its obligations which would prevent it from operating, to reduce its indebtedness to an amount that would permit it to operate as a solvent corporation, and, upon this being accomplished, to liberate it from the supervision of the court. The original trust agreement of May 1, 1938, as well as the amendment thereto of February 28, 1946, provided that it might be terminated at any date before the date of termination

therein provided by resolution of the majority of the trustees, or by the court, effective upon entry of its order or at such later date as should be therein specified.

On the hearing of the petition of appellee Finan, it was admitted that the Whittier Corporation had a capital and surplus of $2,000,000, that it had no obligation except its stock, and that it was paying dividends to its stockholders. Two years before that time, in 1946, when the petition to amend the trust agreement was filed, it was in a similarly good financial condition. No question was raised concerning its ability to carry on as a successful business enterprise without the further aid of the court. In its opinion holding that the trust should be terminated, the district court declared that the purposes of the plan of reorganization had been completely and successfully consummated, and that it was clear that, while the court and the parties to the agreement contemplated that the purposes of the plan of reorganization would be accomplished in eight years, it was their intention that the trust should terminate before that time, whenever final consummation of its purposes was achieved. Since no showing had been made indicating the necessity for continuing the trust, the court declared that it should no longer keep the Whittier Corporation "under its guardianship" and sua sponte terminated the trust agreement and considered the petition as one to conclude finally the proceedings. We concur in this view and determination of the district court.

The trust was established and the voting trustees were appointed by virtue of the order of the court in statutory reorganization proceedings with the purpose of enabling the corporation to operate as a solvent business enterprise. That purpose was fulfilled. "Since the purpose of reorganization clearly is to rehabilitate the business and start it off on a new and to-be-hoped-for more successful career, it should be the objective of courts to cast off as quickly as possible all leading strings which may limit and hamper its activities and throw doubt upon its responsibility. North American Car Corporation v. Peerless Weighing & Vending Mach. Corporation, supra [143

F.2d 940]. "Congress did not intend that the Bankruptcy Court should, after an approval of a plan under Chapter X, Bankr. Act, 11 U.S.C.A. § 501 et seq., have power to remain a wet-nurse to the reorganized company. A bankruptcy court cannot obtain that power merely by inserting a provision reserving jurisdiction." In re Flatbush Ave.-Nevins St. Corporation, supra [133 F.2d 762].

■ It is further contended that, assuming the order extending the term of the voting was invalid, the court could not sua sponte order the termination of the trust, discharge the trustees, and enjoin them from voting the stock, since it was entirely within the province of the stockholders to continue voluntarily to leave their stock in the trust, permitting it to be voted by the voting trustees, and that they were free to withdraw from the voting trust at any time they so desired. This overlooks the realities of the case. The voting trust came into being because of compulsion—a compulsion arising out of the insolvency proceedings. In its origin, the plan embodying the trust was to save the assets through the action of the court for the benefit of the bondholders, stockholders, and creditors. They were forced by necessity to consent to the trust, and to the relinquishment of their rights to the voting trustees. Since the original purpose of the plan of reorganization has been effected, each stockholder is entitled to vote his stock and enter into combinations for management or control unhindered and unobstructed by the voting trust combination that exists only through the order of the court. As was well said with respect to a somewhat similar situation, appellants, relying upon the inertia of the certificate holders, and the favorable provisions of the trust agreement which make non-action by the beneficiaries, approval of the action of the trustees, sought to use the assets and facilities of the trust to retain their control of the stock of the passive beneficiaries and force dissident beneficiaries to withdraw and place themselves among the minority stockholders. They are not entitled to that advantage. Upon the dissolution of the trust, all parties to it have the privilege of entering or abstaining from entering into a voting trust. A new voting trust requires affirmative action by each stockholder in entering into the agreement and depositing his stock. If all the stockholders are freed from the voting trust by its dissolution, the trustees would face a far more difficult task in forming a new trust and petitioner and others would be in a better situation to organize a more favorable combination or voting trust. See Olson v. Rossetter, 330 Ill.App. 304, 71 N.E.2d 556, 563, affirmed 399 Ill. 232, 77 N.E.2d 652.

■ While appellee did not, in his petition, ask the court to terminate the trust agreement, he did challenge the validity of the order extending the trust, and asked for an order to show cause why the trustees should not be discharged, their authority under the voting trust terminated, and that they be permanently enjoined from voting any of the stock which they held as trustees. Under the petition, as well as under all of the other circumstances of the case, it was proper for the court sua sponte to consider the petition as one to conclude finally the proceedings, and to terminate the trust agreement.

■ In terminating the trust and finally concluding the proceedings, the court had the power to determine all matters with respect to the trustees theretofore appointed by it by virtue of the statutory provisions. Since it appeared that the trustees would continue to vote the stock in the voting trust, even after termination of the trust by the court, the order should have included provision, in accordance with petitioner's request, that the trustees be discharged and that they be enjoined from further voting of the stock in the voting trust.

In accordance with the foregoing, the case is remanded to the district court for entry of an order consonant with this opinion.