**GROUP OF BOSTON AND PROVIDENCE RAILROAD CORPORATION STOCKHOLDERS**

v.

**INTERSTATE COMMERCE COMMISSION et al.**

**Civ. No. 1066.**

United States District Court
E. D. Virginia, Alexandria Division.
March 28, 1955.

wholly within Texas, at one of its compressor stations, is not affected by these proceedings.

John A. K. Donovan, Falls Church, Va. and Herbert H. Corbin, New Haven, Conn., for The New York, New Haven and Hartford R. Co.

James E. Kilday, Willard R. Memler, Sp. Assts. to the Atty. Gen., Stanley N. Barnes, Asst. Atty. Gen., Lester S. Parsons, Jr., U. S. Atty., Norfolk, Va. and Harlan E. Freeman, Asst. U. S. Atty., Alexandria, Va., for the United States.

Isaac K. Hay, Asst. Gen. Counsel, and Edward M. Reidy, Gen. Counsel, of Interstate Commerce Comm., Washington, D. C., for the Commission.

Before DOBIE, Circuit Judge, and STERLING HUTCHESON and BRYAN, District Judges.

BRYAN, District Judge.

Minority stockholders of the Boston and Providence Railroad, now in bankruptcy reorganization before the Federal district court of Massachusetts, here complain of the refusal of the Interstate Commerce Commission to determine and prescribe divisions of operating revenues between the B & P and the New York, New Haven & Hartford Railroad Company in respect to local and through traffic moved over B & P's lines by New Haven in its operation of those lines in connection with the New Haven system. B & P having no rolling stock or operational organization of its own, prior to 1938 its lines were operated by New Haven under a lease; in that year the lease was rejected by the Federal district court of Connecticut in the bankruptcy reorganization of New Haven; and since then New Haven's trustees, or the reorganized New Haven, have operated B & P for the latter's account under the Connecticut bankruptcy court's order, B & P's earnings and expenses being computed upon a formula fixed by the Connecticut court instead of by a division of rates with New Haven.

The burden of the complaint is that following termination of the lease B & P's lines have been in continuous use by the New Haven; that New Haven is collecting all the revenues; that computation of B & P's earnings and expenses by

Andrew W. Clarke, and Joseph B. Hyman, Alexandria, Va., and Armistead B. Rood, Washington, D. C., for plaintiff.

490

the formula shows a huge deficit every year when in fact the B & P is a highly profitable road; that if it were allotted a division of rates with New Haven as provided by sections 1(4) and 15(6) of the Interstate Commerce Act, 49 U.S.C. A. §§ 1(4), 15(6), it would reap the benefit of its productiveness; that the market value of its holdings have been sharply depressed by the denial of rates to it; and that by this means New Haven is forcing a sale of B & P's properties to New Haven and at a price far below a fair valuation.

The Commission dismissed the application for want of authority to entertain it. Finding that no joint rates existed between the two railroads, it held it was without power to fix divisions. The underlying reasons were (1) that B & P does not qualify as a carrier entitled to rates, and (2) that the Commission has no jurisdiction to give it rates while the bankruptcy court is supervising the operation of B & P and adjusting its earnings and expenses under the court's formula. This suit seeks vacation of the dismissal and "such further relief" as the court shall deem proper, the latter prayer contemplating a peremptory direction to the Commission to fix rates for B & P. In addition to the original defendants—the United States and the Interstate Commerce Commission—the Court has admitted the New York, New Haven & Hartford as an intervening defendant. Respondents' respective motions to dismiss and answers raise common issues. As will appear from the following narrative, there are no substantial fact differences.

Owned by Boston and Providence Railroad Corporation, Massachusetts chartered, B & P's lines extend from Providence, Rhode Island, to Boston, Massachusetts. It leased all of its properties in 1888 to the Old Colony Railroad Company for 99 years; Old Colony in 1893 demised this leasehold, and its other property, to the New Haven for a like period; and thereafter the New Haven operated the lines of both. B & P's rails provide the New Haven's only access to Boston; they are the sole link of the New Haven system with the Boston area; and thus for the New Haven's through trains between Boston on one end and New York City, the South, and the West on the other, B & P is indispensable to New Haven.

In 1935 the New Haven petitioned the United States District Court of Connecticut for reorganization under section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205. On June 2 or 3, 1936 the court rejected the Old Colony lease, and the next day Old Colony (stock controlled by New Haven) entered the same proceeding as a secondary debtor. Soon after the acceptance by the court of the reorganization application of New Haven, in order to account to the mortgagees, security holders and lessors of the New Haven, the trustees prepared a segregation, among the several divisions, of the entire earnings and expenses of the whole railroad system under their administration. This allocation indicated that the B & P was operating at an annual loss, and thereupon New Haven's first mortgagee petitioned the court to disaffirm the B & P lease. B & P resisted. After notice and pursuant to section 77, sub. c(10) of the Bankruptcy Act, the court referred the proposed segregation to the Interstate Commerce Commission for "its recommendation as to the method or formula by which the segregation and allocation should be made." On April 15, 1938 the Commission filed with the court its report approving the formula so submitted by the trustees, no exceptions were taken, it was adopted by the court, and no appeal was noted. By order of July 19, 1938 (No. 217) the reorganization court disaffirmed B & P's lease and decreed that, "5. Pending further order of Court the operation of the property of Boston and Providence for the account of that corporation shall be continued pursuant to subdivision c(6) of Section 77 of the Bankruptcy Act * * *." The subdivision reads as follows:

"If a lease of a line of railroad is rejected, and if the lessee, with the

approval of the judge, shall elect no longer to operate the leased line, it shall be the duty of the lessor at the end of a period to be fixed by the judge to begin the operation of such line, unless the judge, upon the petition of the lessor, shall decree after hearing that it would be impracticable and contrary to the public interest for the lessor to operate the said line, in which event it shall be the duty of the lessee to continue operation on or for the account of the lessor until the abandonment of such line is authorized by the Commission in accordance with the provisions of section 1 of the Interstate Commerce Act as amended."

August 4, 1938, the Federal district court of Massachusetts received and accepted the application of the B & P for reorganization. After considerable litigation between the trustees of the two railroads (see Palmer v. Warren, 2 Cir. 1939, 108 F.2d 164 and Warren v. Palmer, 1939, 310 U.S. 132, 60 S.Ct. 865, 84 L. Ed. 1118), authority to determine the cost of operating the B & P was adjudged to be in the New Haven's reorganization court; it was further declared that such administration costs were chargeable on B & P's property (as a first lien, there being no mortgage ahead) but ascertainment of the amount of these costs was left open. The trustees of New Haven and Old Colony on the one side, and the trustees of B & P on the other, thereafter stipulated the amount due the trustees of New Haven and Old Colony by the B & P on administration claims from June 3, 1936 (date of the rejection of the Old Colony lease) to January 1, 1940, as $7,000,000, and the sum due to B & P by New Haven and Old Colony as damages for rejection of its lease as $10,000,-000. The administration deficit continued each year and on December 31, 1946 amounted to $12,000,000.

The Connecticut court by a consummation order dated September 11, 1947, No. 1107, wound up the New Haven proceeding, restored its properties to the corporation free of the trusteeship, directed the reorganized New Haven to operate B & P until further order, but among other things reserved jurisdiction "(o) To consider and to act on any questions respecting claims between the Reorganized Company and the Boston and Providence Railroad Corporation or its trustee * * * arising out of the operation of the lines of the Boston and Providence by the Bankruptcy Trustee or the Reorganized Company". From this order B & P's trustee appealed. He contended (1) that cessation of the operation of B & P by New Haven's trustees ended the power of operation given by 77, sub. c(6), Bankruptcy Act, and constituted an abandonment of such operation prerequiring the permission of the Interstate Commerce Commission; section 1(18) of the Interstate Commerce Act, 49 U.S.C.A. § 1(18); (2) that the operation of B & P by the reorganized New Haven was a merger and could not be undertaken until the Commission had found and fixed, under section 5(2) (b) of the Act, 49 U.S.C.A. § 5(2) (b), just and reasonable terms and conditions for the operation; and (3) that the attempted retention of jurisdiction over claims arising from New Haven's running of B & P was invalid. The contentions were overruled. In re New York, N. H. & H. R. Co., 2 Cir., 1948, 169 F.2d 337, certiorari denied Mulcahy v. New York, N. H. & H. R. Co., 335 U.S. 867, 868, 69 S.Ct. 138, 93 L.Ed. 412.

New Haven's plan of reorganization had theretofore been confirmed (Old Colony Bondholders v. New York, N. H. & H., 1947, 2 Cir., 161 F.2d 413); it included a proposal for the purchase of the B & P, and, incident thereto, the cancellation of all administration claims against B & P as well as the cancellation of B & P's damage claim for the rejection of B & P's lease. The consummation order also retained jurisdiction in the court to conclude the purchase of the B & P.

On April 1, 1948 the trustee of B & P, under the direction of his court, applied to the Commission (1) for authori-

ty under section 1(18–20) of the Act, 49 U.S.C.A. § 1(18–20), to abandon operation of B & P's lines because of the absence of any Commission determination of operating terms and conditions for B & P's lines; and (2) under section 5(2) of the Act, 49 U.S.C.A. § 5(2), to fix just and reasonable terms and conditions for the operation of B & P by New Haven, alleging that neither 77, sub. c (6) of the Bankruptcy Act, nor the order of the Connecticut district court, controlled the operation of B & P's lines after the consummation order, the Commission having sole jurisdiction thereof. Both applications were denied on the authority of In re New York, N. H. & H. R. Co., supra, 169 F.2d 337, the Commission holding that no abandonment of B & P was effected by the consummation order, and that so long as the Connecticut court retained jurisdiction to adjudicate operational claims between the New Haven and the B & P, the Commission was without authority "to pass on the accounting for such operation". See Report of Division 4, Finance Docket 12131, March 24, 1950; Report of Commission on Reconsideration, Finance Docket 12131, October 3, 1950; and Fourth Supplemental Report, Finance Docket 12131, January 5, 1954.

A plan for the reorganization of the B & P was also submitted to its court and was recommended by the Commission. It incorporated provisions for the sale of B & P to New Haven. On objection to some of the sale terms, inter alia, the plan was again referred to the Commission for further study. After hearing all parties in interest, the Commission filed its Fourth Supplemental Report (January 5, 1954, Finance Docket 12131) suggesting certain modifications of the original plan. For the sale of B & P to New Haven the report recommended terms deemed fair and just by the Commission. On March 8, 1954 all of the present plaintiffs, except Eicholz, requested the Commission to withdraw its approval of the last plan of reorganization. With other points, they argued to the Commission that the formula should not govern the accounting between the railroads—that as the two were separate roads, the Commission should make a division of the rates now charged by the New Haven. The requests were declined. Fifth Supplemental Report, July 30, 1954. Action on the plan is now awaiting decision of the instant suit.

The mere relation of the facts in this case is enough to reveal that the plaintiffs' grievances have been carefully heard in behalf of B & P in the Connecticut and Massachusetts federal courts as well as by the Interstate Commerce Commission; it bares the present suit as simply another presentation of the issues already decided by these tribunals. On this score alone the complaint could be dismissed, but to be more explicit, we will rule seriatim on the points made by the pleadings.

I. Clearly the plaintiffs have no locus standi. As shareholders they sue to establish a right belonging to the corporation, but they aver no refusal, inability or failure of the corporation, its directors, officers or trustees to act. Rule 23, F.R.C.P., 28 U.S.C.A. On the contrary, the record depicts a trustee and a supervisory court alert to the very privilege now urged for the corporation by the plaintiffs; witness the attempt of B & P's trustee, on the instruction of the Massachusetts court, to have the Commission certify an abandonment of B & P unless given rates for operation, and to have the Commission fix the terms of an operating agreement between the two roads. Because he has refrained from prosecuting a proceeding and suit in the pattern of the plaintiffs', we are not to infer that the trustee was uninformed or unwilling, but rather that he did not think it advisable.

The statutes governing this suit, 28 U.S.C.A. §§ 1336, 2321, do not either waive the prerequisites of a derivative action or allow suit by persons not directly injured by the deprivation of a right. Assuming that the plaintiffs were the proper parties to initiate the com-

plaint before the Commission, and recognizing that they were the sole petitioners there, we do not think they qualify for that reason alone as parties plaintiff to vacate the Commission's order. Algoma Coal & Coke Co. v. U. S., D.C.E.D.Va.1935, 11 F.Supp. 487, 495–496, by a three-judge court; Pittsburgh & W. Va. R. Co. v. U. S., 1930, 281 U.S. 479, 487, 50 S.Ct. 378, 74 L.Ed. 980; Schenley Distillers Corp. v. U. S., 1946, 326 U.S. 432, 435, 66 S.Ct. 247, 90 L.Ed. 181.

■ II. But, if the plaintiffs may sue, we are satisfied that we have neither the right nor the jurisdiction to grant the decree they pray. Did we have the power, the consequences of such a decree demonstrate its utter lack of merit; that we have no such power is equally clear.

The desired decree would compel the Commission to split New Haven's rates. The result would be to require the New Haven to account to B & P in a manner other than by the formula adopted therefor by the District Court in Connecticut, when the formula has the approval of the Commission and the Connecticut court's authority to ascertain the amounts, if any, due to B & P has been sustained by the Court of Appeals for the Second Circuit as well as by the Supreme Court. Palmer v. Warren, 108 F.2d 164, 167, supra; Warren v. Palmer, 310 U.S. 132, 60 S.Ct. 865, 84 L.Ed. 1118, supra. Furthermore, the Court of Appeals has upheld the Connecticut court in retaining jurisdiction to adjudicate all future claims of B & P arising out of New Haven's operation. In re New York, N. H. & H. R. Co., 169 F.2d 337, certiorari denied Mulcahy v. New York, N. H. & H. R. Co., 335 U.S. 867, 69 S.Ct. 138, 93 L.Ed. 412, supra.

We agree with the Second Circuit; and we agree with the conclusion drawn by the Commission from those decisions —"It follows, therefore, that so long as the Boston & Providence lines are operated by the New Haven as lessee for the account of the lessor pursuant to section 77(c) (6), the Connecticut district court, and not this Commission, has exclusive jurisdiction to pass on the accounting for such operation". Report of Division 4, March 24, 1950, Finance Docket 12131, supra. The trustees were "lessees" even after the termination of the lease. 169 F.2d 337, 339, footnote 9. Previously in the same report the Commission recalled that "The applicant [B & P's trustee] concedes that the operation of the Boston & Providence lines was governed by the provisions of section 77(c) (6) during the reorganization of the New Haven, and that the accounting therefore is subject to the exclusive jurisdiction of the Connecticut district court."

It is noteworthy that B & P's trustee was an active participant in all of this litigation; it is significant that he did not seek a court review of the Commission's March 24, 1950 report of "no jurisdiction".

On the issue of jurisdiction respondents emphasize the character of the Commission's order—a declaration of no jurisdiction—and argue that it is a "negative" order, that the plaintiffs actually sue to compel the Commission to take jurisdiction, and that their remedy is mandamus, maintainable only in the courts of the District of Columbia, the official residence of the Commission. Plaintiffs reply that since Rochester Tel. Corp. v. U. S., 1939, 307 U.S. 125, 135, 140, 59 S. Ct. 754, 83 L.Ed. 1147, no distinction is to be made between negative and positive orders of the Commission. On the other hand we observe Manufacturers R. Co. v. U. S., 1917, 246 U.S. 457, 483, 38 S.Ct. 383, 390, 62 L.Ed. 831, holding that the District Court is not permitted to review the action of the Commission in refusing "to fix divisions" of joint rates; Rochester Tel. Corp. v. U. S. notices but does not expressly overrule Manufacturers R. Co. v. U. S. in this regard. 307 U.S. at page 140, footnote 23, 59 S.Ct. 762.

Part II of the Interstate Commerce Act squarely answers the question as to such orders under that chapter—"305 (g). Any final order made under this chapter shall be subject to the same right of relief in court by any party in interest

as is now provided in respect to orders of the Commission made under chapter 1 of this title: Provided, That where the Commission, in respect to any matter arising under this chapter, shall have issued a negative order solely because of a supposed lack of power, any such party in interest may file a bill of complaint with the appropriate district court of the United States, convened under section 2284 of Title 28, and such court, if it determines that the Commission has such power, may enforce by writ of mandatory injunction the Commission's taking of jurisdiction." 49 U.S.C.A. § 305(g). We find nothing to make this section applicable to the chapter 1 duties of the Commission. As it was first enacted August 9, 1935, along with amendments to chapter 1, the implication is that no such mandative order is available in chapter 1 cases, though a District Court has power generally to issue mandatory injunctions in an appropriate situation.

However, we need not and do not pass upon this ground of the jurisdictional defense.

■ III. But we think that the Commission was correct in deciding that B & P was not in fact eligible to have rates of its own—not entitled to a division. For this position it relied on its unappealed July 7, 1952 opinion in Wood v. New York Central Railroad Co., No. 30294. There bondholders of The Peoria and Eastern Railway Company complained that neither Peoria nor the New York Central, its operating agent, had filed in the name of Peoria & Eastern "rates, fares and charges for transportation between points on its line" and had failed "to establish" for it through routes, joint rates and divisions pursuant to sections 1(4) and 15(6) of the Interstate Commerce Act. Peoria & Eastern's properties consisted of a line of railroad extending ·212 miles and "all necessary equipment for common-carrier operations." It had been completely operated first by the Big Four railroads and then by the New York Central since 1890. Analyzing the Act's definition of "common carrier" and observing its emphasis upon "transportation" as the key for ascertaining what railroads must file and be assigned tariffs of rates and divisions, the Commission reached the opinion that the compulsions of the Act applied only "to carriers actually engaged in the transportation of passengers or property." Peoria & Eastern was held to have no such status.

A fortiori, then, B & P has none. Contrary to the plaintiffs' view, we see B & P as an integral part of the New Haven system. It is not an independent carrier in actual transportation. Nor are the rates now on file for New Haven joint rates with B & P. Legally B & P is still the "lessor", and New Haven is still the "lessee" of B & P's facilities; and they will continue so for as long as the Connecticut federal court allows the New Haven to run B & P under 77 sub. c (6) of the Bankruptcy Act or until the line is abandoned. In re New York, N. H. & H. R. Co., supra, 169 F.2d 337, 339, footnote 9.

The ruling of the Commission in the instant proceeding and in the Wood case is undergirded by the decision of the Second Circuit in the New Haven-B & P-Old Colony litigation. Palmer v. Palmer, 2 Cir., 1939, 104 F.2d 161, 165. There Old Colony was aggrieved by the same segregation formula and demanded a division of rates under 15(6). Judge Hand, noting that 15(6) was but an implement of 1(4), declared that it applied only to roads under separate management.

The complaint will be dismissed, with costs to the defendants, and the action stricken from the docket.